# US DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Henok A. Mengesha

v.                                                     1:19-cv-03304

Benidia Rice et al                                     Judge: Jackson, Amy Berman

### <u>Plaintiff's LCvR 65.1(c) motion for preliminary injunction against the district of Columbia</u>

Plaintiff is requesting a preliminary injunction to restrain and reverse the District of Columbia from reporting to the federal offset program and to any of its branches and from reporting to credit reporting agencies without a valid court order and without an application for services from the obligee. The district has already admitted, see its motion to dismiss, that it reported to the federal offset program under the vacated and dismissed order/case because it " did not know its case was dismissed". However, the district continues to use the same vacated and dismissed case to withhold through the federal offset program. Since it has refused to voluntarily cease and reverse the reporting to the federal offset program, and there are no adequate remedies at law, a preliminary and permanent injunction is proper measure against the district.

The District of Columbia runs an IV-D agency which is a federal program that allows child support enforcement through the federal programs that all states are required to follow. The district of Columbia or any state IV-D agency can withhold any income through the Federal offset program provided it has a valid court order and an application for services from the obligee if the support order is a private case.



RECEIVED
Mail Room
MAY 1 5 2020
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

To withhold income, any income, the district has to submit to the Federal offset program. The Federal Office of Child Support Enforcement (OCSE) provides a single submission procedure, known as the Federal Collection and Enforcement Program (also referred to as the Federal Offset Program), for submitting cases to the OCSE Debtor Master File for each of the following five remedies: 1) federal income tax refund offset; 2) federal administrative offset; 3) denial of U.S. passports; 4) Multistate Financial Institution Data Match (MSFIDM); and, 5) federal insurance match, see attached exhibit 1 created for states that summarizes the function of OCSE.

On June 2015, the district reported plaintiff to Federal offset program using a DC superior court order that was paid in full, dismissed and vacated order of 09-sup-1273 case, see exhibit 2. The reporting is still reflected on the federal offset program and has been used by the district to unlawfully withhold income in 2016, 2018 and 2019. The district has refused to reverse and refrain from the reporting. The district has also reported to the credit reporting agencies based on the same dismissed case. This reporting has caused severe harm and will continue to cause harm. I am unable to get government clearances, unable to refinance or purchase properties, unable to renew my licenses or travel documents. Even though the district has not reported under 09-drb-1388 order, it should be restrained to do so because that order does not contain the federally and state required order to withhold, to report to credit reporting agencies and there is no application for services from the obligee.

DC and federal law mandate an order to withhold prior to withholding:

§ 46–205. Contents of support order. All support orders, whether they are original orders or modifications of existing orders, **shall** contain the following:

(1) A provision ( order) requiring the withholding of support payments from the obligor's

earnings or **other income** in accordance with this subchapter;

DC Statute is consistent with Federal statutes that an order to withhold must exist prior to

withholding:

45 CFR § 303.101 (g) Provision for withholding in all child support orders. Child support

orders issued or modified in the State whether or not being enforced under the State IV-D

plan **must** have a provision for withholding of income.

I have a substantial likelihood of success on the merits of my underlying case. The district

of Columbia or any state IV-D agency can withhold any income through the Federal offset

program provided it has a valid court order and with an application for services from the obligee

if the support order is a private case. The district does not have any order or a request for services.

The order it used was paid in full, dismissed and vacated. The other DRB order does not contain an

order to withhold, to report to credit reporting agencies and there is no request for service from the

obligee. Only the DC superior court can enforce private child support orders under DRB order unless

the court orders a withholding and the obligee requests the services of the IV-D agency; IV-D agency

cannot enforce a private DRB order through the federal offset program without valid provisions. I

have shown a prima facie evidence for presumption of irreparable harm- the district is not

permitted by law to refer to the federal offset program of an order that is paid in full and dismissed

and vacated. As a matter of law, the government should be restrained.

Due to the unlawful referral to the federal offset program and due to the unlawful referral

to the credit reporting agencies, I have suffered (real and actual) and will continue to suffer

irreparable harm in the absence of an injunction against the district. The harm suffered by the

plaintiff in the absence of an injunction would exceed the harm suffered by the opposing party if

the injunction is issued and there are no adequate remedies at law.  An injunction would not disserve the public interest because the District has no legal authority or court order to report to the federal offset program or credit reporting agencies and the obligee has not requested the district's services.

Once the district obtains an order to withhold, and a request for services, it should follow the procedures that are established to report to the federal offset program or to the credit reporting agencies. But, until it obtains such an order and a request for services, it must be restrained through a preliminary injunction.

Henok A. Mengesha

**Certificate of Service**

I certify that a true copy of the foregoing and attached was mailed through regular mail and

delivered to Defendant's        5/14/2020

*Henok Araya*

Matthew trout

Assistant attorney general

441 4th st nw suite 630 south

Washington dc 20001

Matthew.trout1@dc.gov

Benidia Rice

441 4th st nw suite 630 south

Washington dc 20001

And

The District of Columbia

Serve: Mayor Bowser

5

1350 Pennsylvania av nw

Washington dc 20004

DC attorney General

1350 Pennsylvania av nw

Washington dc 20004

And

441 4th st nw suite 630 south

Washington dc 20001


And

Jame Kevin McIntyre

441 4th st nw suite 630 south

Washington dc 20001

And

Nicole M. Reece

441 4th st nw suite 630 south

Washington dc 20001

And

Briganty, Yajaira

441 4th st nw suite 630 south

Washington dc 20001

6

# Exhibit 1



I.    GUIDANCE TO STATES - CERTIFICATION ................................................................1

   A.   *OVERVIEW* ...........................................................................................................*1*
   B.   *CERTIFICATION AND UPDATE PROCESS*...........................................................*1*
       1.   Annual Certification Letter...................................................................................2
       2.   Updates to Case Information.................................................................................2
   C.   *DUE PROCESS REQUIREMENTS* .......................................................................*3*
       1.   Pre-Offset Notice..................................................................................................3

II.   PROGRAMS....................................................................................................................4

   A.   *FEDERAL INCOME TAX REFUND OFFSET PROGRAM*.....................................*4*
       1.   Submittal Criteria.................................................................................................5
       2.   IV-D Program Costs.............................................................................................5
       3.   Security and Safeguarding Requirements.............................................................6
   B.   *ADMINISTRATIVE OFFSET PROGRAM* .............................................................*7*
       1.   Submittal Criteria.................................................................................................7
       2.   Payment Types......................................................................................................7
       3.   Payments Exempt from Administrative Offset......................................................8
   C.   *OFFSET PROCESS AND DISTRIBUTION OF COLLECTIONS* ...........................*12*
       1.   Offset Hierarchy.................................................................................................12
       2.   FMS Offset Notice .............................................................................................13
       3.   Joint Return Offset/Injured Spouse Allocation ..................................................13
       4.   Distribution of Collections from Offsets............................................................14
       5.   Adjustments of Collections from Offsets............................................................15
       6.   FMS Offset Service Fees....................................................................................15
       7.   State Payments....................................................................................................15
   D.   *FEDERAL PASSPORT DENIAL PROGRAM* .......................................................*17*
       1.   Submittal and Removal Criteria.........................................................................17
       2.   Revocation..........................................................................................................18
       3.   Limited Validity Passports .................................................................................19
       4.   DoS Passport Application Denial Letter.............................................................19
       5.   Customer Service................................................................................................19
   E.   *MULTISTATE FINANCIAL INSTITUTION DATA MATCH (MSFIDM)*.................*20*
   F.   *FEDERAL INSURANCE MATCH PROGRAM*.......................................................*20*

III.  SINGLE AND INTERSTATE PROCEDURES .........................................................21

   A.   *PROCEDURES FOR CONTESTING SINGLE-STATE CASES* ..............................*21*
   B.   *INTERSTATE CASES*...........................................................................................*21*
       1.   Multiple Orders and Interstate Communication .................................................21
       2.   Submitting Debts on Interstate Cases.................................................................22
       3.   Procedures for Contesting Interstate Cases........................................................22

IV.   REFERENCES................................................................................................................23

V.    EXHIBITS ......................................................................................................................24

   A.   *ANNUAL CERTIFICATION LETTER*....................................................................*25*

*B.*   *OCSE PRE-OFFSET NOTICE*............................................................................*29*

*C.*   *TREASURY REGULATIONS – Federal Income Tax Refund Offset*...................................*31*

*D.*   *TREASURY REGULATIONS – Federal Administrative Offset*.........................................*36*

## I.     GUIDANCE TO STATES - CERTIFICATION

### A.     OVERVIEW

The Federal Office of Child Support Enforcement (OCSE) provides a single submission procedure, known as the Federal Collection and Enforcement Program (also referred to as the Federal Offset Program), for submitting cases to the OCSE Debtor Master File for each of the following five remedies: 1) federal income tax refund offset; 2) federal administrative offset (including vendor/miscellaneous payments and federal retirement payments); 3) denial of U.S. passports; 4) Multistate Financial Institution Data Match (MSFIDM); and, 5) federal insurance match.  States are required to submit all cases that meet the criteria for federal income tax refund offset to OCSE for collection through the OCSE debtor file.  In addition, states must have procedures in place to participate in the passport denial program and MSFIDM.  Administrative offset and federal insurance match are optional programs.  Cases are submitted to all five programs if they meet the programs' eligibility criteria and are not specifically excluded by the state.

For purposes of this Action Transmittal, 'case' refers to a unique state, Social Security number (SSN) and case type combination.  Debt and/or arrears refer to the past-due, unpaid child support amount that is owed by a noncustodial parent.  States are required to combine or roll up a noncustodial parent's debts and submit as one Temporary Assistance for Needy Families (TANF) or non-TANF case type when appropriate.

### B.     CERTIFICATION AND UPDATE PROCESS

The single submission process ensures that cases meet the appropriate eligibility criteria for the five remedies.  Most eligibility criteria for these five programs are uniform.  For example, the support obligation must have been established under a court order or an order of an administrative process established under state law.  Past-due support cannot include fees or court costs or any other non-child support debts owed to the state or to the family.  Past-due support may, however, include medical support, but only if a specific dollar amount is included in the order.  Interest may be included in the amount certified if it is considered "support" under state law. Differences in eligibility requirements will be noted where appropriate.

Cases certified as TANF debts may include an amount for support and maintenance of a child, or of a child and the parent with whom the child is living. Certifications in non-TANF and Medicaid-only cases may include an amount for support and maintenance of a child; in addition, spousal support is eligible for certification in cases in which the parent is living with the child and the spousal support and child support obligations are included in the same order.  At state option, amounts certified in non-TANF cases may be limited to past-due support that accrued since the state IV-D agency began enforcing the support order. In non-TANF or Medicaid-only cases, the state must check its records to see if there are any former TANF or foster care arrearages.

1

For each remedy, the state IV-D[1] agency must:

- verify the accuracy of the arrears;
- possess a copy of the order, including any modifications;
- obtain a copy of the payment record or an affidavit signed by the custodial party attesting to the amount of support owed;
- verify the accuracy of the noncustodial parent's name and SSN; and
- have the custodial party's current, or last known, address.

A state must submit two separate cases for a noncustodial parent if the cases are of different types (i.e., TANF and non-TANF). However, if a noncustodial parent has more than one TANF debt, the arrearage amounts should be combined and submitted as one case. Similarly, multiple non-TANF debts should be combined as one case prior to submission.

### 1.      Annual Certification Letter

States must submit a signed copy of the Annual Certification Letter (see Exhibit A) to OCSE that verifies all of the cases certified during the upcoming year will meet the specified requirements of the remedy or remedies to which they are being submitted.  In addition, states indicate whether they will issue their own notices or have OCSE issue the Pre-Offset Notice (PON) for them.  The state also provides information on its preferences regarding the mailing of PONs, holding periods for new cases before they are submitted for offset, and contact information.

### 2.      Updates to Case Information

The Department of Health and Human Services (HHS) regulations require states to notify OCSE of any deletions of, or any change in, the amount of debt submitted for federal tax offset on an ongoing basis throughout the year.[2] The Department of Treasury (Treasury) regulations also require states to notify OCSE of any decrease in, or elimination of, an amount referred for collection by federal income tax refund offset and/or by administrative offset within timeframes established by OCSE.[3]  Because all federal remedies depend on the information that is maintained on the OCSE debtor file, it is imperative that states keep the information current. OCSE instructs states per this Action Transmittal, issued in accordance with  Treasury regulations and HHS regulations, to notify OCSE of any increase, decrease, or elimination of an amount referred for tax refund or administrative offset on at least a bi-weekly basis.

---

[1] IV-D refers to Title IV, Part D of the Social Security Act, which is the federal statute authorizing the child support program
[2] *See* 45 CFR 303.72(d)(2).
[3] *See* 31 CFR 285.1(g) (regarding administrative offset) and 31 CFR 285.3(c)(5) (regarding federal tax offset); *See also* 31 CFR Part 285, Debt Collection Authorities Under the Debt Collection Improvement Act Of 1996.

2

## C.   DUE PROCESS REQUIREMENTS

### 1.   Pre-Offset Notice

Individuals must receive a written advance notice - called a Pre-Offset Notice (see Exhibit B) – at least 30 days before their case may be submitted to Treasury's Financial Management Service (FMS) for offset.[4] States may choose to have OCSE hold their new cases for 30, 45, 60 or 90 days before they are submitted to FMS for offset. As noted in the PON, debts will remain subject to collection by offset until paid in full. Any past-due support that accrues after the notice is sent will be added to a noncustodial parent's debt and subject to offset without further notification. The PON must be issued for all cases that were not previously submitted to the federal offset and passport denial programs. States may issue their own notices or have OCSE issue the PON on their behalf.

OCSE's PON is designed to be used for participation in the combined offset and passport denial programs. OCSE encourages states producing their own offset notices to include similar language.  All PONs <u>must</u> inform the noncustodial parent of the following:[5]

- the nature and amount of the debt;
- the right to contest the State's determination that past-due support is owed or the amount of past-due support submitted for offset;
- the right to an administrative review by the submitting state or, at the noncustodial parent's request, the state with the order upon which the referral for offset is based; and
- the procedures and timeframes for contacting the IV-D agency in the submitting state to request administrative review.

Additionally, the Internal Revenue Service (IRS) recommends that states include in their notices the following language:

> If you are married, filing a joint income tax return and you incurred this debt separately from your spouse, who has no legal responsibility for the debt and who has income and withholding and/or estimated tax payments, your spouse may be entitled to receive his or her portion of any joint federal tax refund.  If your spouse meets these criteria, he or she may receive his or her portion of the joint refund by filing a Form 8379 - Injured Spouse Claim and Allocation.  Form 8379 should be attached to the top of the Form 1040 or 1040A when you file, or filed according to other instructions as indicated on the Form 8379.

OCSE's PON also includes information about credit bureau reporting.  Section 466(a)(7) of the Act requires states to have procedures for periodically submitting cases with support arrearages to consumer reporting agencies after providing notice and an opportunity to contest the accuracy of the information being reported.

---

[4] 31 CFR 285.1(h) and 45 CFR 303.72(e).
[5] 31 CFR 285.1(h) and 45 CFR 303.72(e).

The decision about how often to issue a PON is a state policy decision. However, OCSE recommends a new notice should be issued whenever an arrears balance is fully paid and a new debt accrues or when there are other significant changes in the amount certified, such as a large increase in the debt amount. States that send periodic arrearage notices may not find it necessary to update their PON as often as other states that do not send regular notices to noncustodial parents. OCSE recommends that all states send notices to noncustodial parents at least annually.

When changes are made to a state-issued PON, the state must submit the proposed revised PON to its OCSE Regional Office for review prior to its use to ensure that it meets the requirements under 45 CFR 303.72(e). Also, a copy should be sent to OCSE's Federal Collections and Enforcement unit.

States that choose to have the PON printed and mailed by OCSE will be charged a nominal fee for this service. The service fee covers the costs of printing the notices, customized envelopes, stuffing, postage and mailing. Any fees charged the State are reimbursable at the current Federal matching rate for child support administrative expenses.

## II.   PROGRAMS

### A.   FEDERAL INCOME TAX REFUND OFFSET PROGRAM[6]

Congress enacted the Federal Income Tax Refund Offset Program (tax offset) on August 13, 1981[7] to recover delinquent child support debts. This collection mechanism involves the interaction of all State IV-D agencies and three federal agencies (OCSE, FMS and IRS). All states must have and use procedures for tax offset for TANF, non-TANF, and foster care cases that meet the criteria for submittal under 45 CFR 303.72.[8]

When the program began, it was restricted to child support debts owed in Aid to Families with Dependent Children (AFDC, the precursor to TANF) cases. However, as a result of the Child Support Enforcement Amendments of 1984,[9] the program was expanded to include child support debts in non-assistance cases. The Omnibus Budget Reconciliation Act of 1990[10] further expanded the tax-offset program for non-AFDC[11] debts (AFDC was the precursor program to TANF.) This law authorized the use of this program for non-TANF debts in the collection of child support and past-due spousal support when the parent is living with the child and the spousal support and child support obligations are included in the same order.

---

[6] 45 CFR 303.72, §464 of the Act, and 31 CFR 285.3.
[7] Omnibus Budget Reconciliation Act of 1981, P.L. 97-35, section 2331, August 13, 1981.
[8] 45 CFR 302.60 and 303.6(c)(3).
[9] P.L. 98-378, August 16, 1984.
[10] P.L. 101-508, §5011(b), November 5, 1990.
[11] Aid to Families with Dependent Children (AFDC) program was repealed by the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) of 1996 (P.L. 104-193) and replaced by the Temporary Assistance for Needy Families (TANF) program.

### 1.    Submittal Criteria

IV-D cases certified for tax refund offset must meet one of the following criteria[12]:

- the state has an assignment of support rights under section 408(a)(3) or 471(a)(17) of the Act,
- the state is enforcing the support obligation pursuant to section 454(4)(A)(ii) of the Act, or
- the state has an assignment of medical support rights under section 1912(a)(1)(A) of the Act.

In addition:

- TANF or title IV-E foster care cases must have at least $150 in past-due support; states may combine assigned support amounts from the same noncustodial parent in multiple cases to reach the $150 minimum.[13]
- Non-TANF or Medicaid-only cases must have at least $500 of past-due support owed to or on behalf of a qualified child; debts from the same noncustodial parent in multiple cases may be combined to reach the $500 minimum.[14]

The Deficit Reduction Act of 2005 (DRA), which amended Section 464 of the Social Security Act, redefines the term "past-due support" to mean support owed to any child, whether or not a minor, and deletes all references to the term "qualified child." This means that effective October 1, 2007, states must certify non-TANF cases that were previously not eligible for the Federal Tax Refund Offset Program because the child was no longer a minor.[15]

Past-due medical support set in accordance with state guidelines may be submitted for federal income tax refund offset if the requirements in 45 CFR 303.72 are met. Federal regulations at 45 CFR 303.72(a) define past-due support qualifying for federal income tax refund offset to include past-due support owed in cases with assigned support and in cases in which the IV-D agency is providing services under §302.33. Past-due support may include medical support, but only if a specific dollar amount is designated in the order for medical purposes.[16] Treasury regulations at 31 CFR 285.3(c)(1) authorize the submission of past-due support for federal income tax refund offset in cases in which support has been assigned to the state or cases in which the state is providing collection services under section 454(4) of the of the Social Security Act. Both sets of regulations cover all types of IV-D cases.

### 2.    IV-D Program Costs

A custodial party who has applied for IV-D services may be charged an additional fee by the state, not to exceed $25, for the federal income tax refund offset remedy.[17]  Some states recover

---

[12] 45 CFR 303.72, 31 CFR 285.3 and section 1912(a)(1)(A) of the Act.
[13] 45 CFR 303.72(a)(2).
[14] Section 464(b)(2)(A) of the Act, 45 CFR 303.72(a)(3), and 31 CFR 285.3(c).
[15] See P.L. No. 109-171, section 7301(f)(1).
[16] 45 CFR 302.51(c)(1).
[17] See 45 CFR 303.72(i).

costs of services directly from the custodial party by deducting this fee from the tax refund when it is intercepted.[18]   It is not necessary to obtain consent from the custodial party before submitting a non-TANF case for offset.  Custodial parties seeking IV-D services should be advised that their application allows the IV-D agency to take any other enforcement action allowed by law, which includes the full range of services of the IV-D agency.

### 3.        Security and Safeguarding Requirements

The Internal Revenue Code (IRC) contains provisions pertaining to disclosure of information obtained by state agencies under the Federal Income Tax Refund Offset Program, 26 U.S.C. 6103(l)(10).  This law provides that tax return information can be used "only for the purposes of, and to the extent necessary in, establishing appropriate agency records, locating any person with respect to whom a reduction under subsection (c)… of section 6402 [26 USCS § 6402] is sought for purposes of collecting the debt with respect to which the reduction is sought, or in the defense of any litigation or administrative procedure ensuing from a reduction made under subsection (c)… of section 6402 [26 USCS § 6402]" [tax offset for past-due support].[19]   In addition, section 6103(p)(4) of the IRC addresses the safeguarding of information obtained through the federal income tax refund offset process.  Transmittals of tax return information obtained through OCSE must be protected from unlawful use, disclosure or access in accordance with these requirements.

Please refer to IRS Publication 1075[20] "Tax Information Security Guidelines for Federal, State and Local Agencies and Entities," revised October 2007 for guidance in assuring that existing practices, controls, and safeguards employed at the state or local child support offices adequately protect the confidentiality of the tax data provided by the IRS.  Per 26 USC 6103(l)(6)(B), the address, Social Security number and the amount of any reduction (relating to offset of past-due support against overpayments) may be disclosed to certain agents under contract with the IV-D agency for child support purposes.

Special attention should be paid to the sections on illegal and unauthorized disclosure of tax information, particularly the Safeguard Procedures and Safeguard Activity Reports that are required when offices receive federal tax return information.[21]   In states where the local child support offices are provided with unverified tax information, the local office should provide safeguard information to the state IV-D agency so that either a consolidated Safeguard Activity Report can be prepared, or the local reports can be attached to the Safeguard Activity Report submitted to the IRS by the state IV-D agency.  Copies of these reports must be appropriately encrypted and forwarded electronically to the IRS Office of Safeguards mailbox at safeguardreports@irs.gov.  Paper copies are no longer accepted by the IRS.  According to Section 6103(p)(4) of the IRC, the IRS has the authority to conduct its own safeguard reviews to ensure that tax return information is used only as authorized and that the state and/or local child support agency has protected the information against unauthorized disclosure.

---

[18] Pursuant to 45 CFR 302.33(d)(ii) and 45 CFR 303.72(i)(2).
[19] See also 31 CFR 285.3(i).
[20] http://www.irs.gov/pub/irs-pdf/p1075.pdf.
[21] See section 7 of IRS Publication 1075 and 26 U.S.C. 6103(p)(4)(E).

## B.     ADMINISTRATIVE OFFSET PROGRAM

The Debt Collection Improvement Act (DCIA) allows certain federal payments to be administratively offset to collect past-due child support obligations.[22]  All payments that are eligible for offset under the DCIA, other than federal tax refunds, are categorized as "administrative" offsets.  Executive Order (EO) 13019[23] directs HHS to implement procedures to report to Treasury information on past-due child support claims referred by the states to HHS.  In addition, EO 13019 directs Treasury, in consultation with HHS, to develop and implement procedures to collect delinquent child support by administrative offset.  These procedures are regulated at 31 CFR 285.1.

### 1.     Submittal Criteria

The administrative offset program is optional for states.  All case types that are eligible for federal income tax refund offset are eligible for administrative offset. A debt may be submitted for administrative offset when it is at least $25, and is at least 30 days past-due,[24] although states have flexibility to determine a higher threshold.

Eligible noncustodial parents are automatically submitted for administrative offset unless the state that certifies their arrearage amount excludes them.

### 2.     Payment Types

Both recurring and nonrecurring payments are eligible for administrative offset.  Recurring payments are those that are issued on a regular, routine, or repeated basis.  A nonrecurring payment is one that is issued only once and is not expected to be repeated, such as a lump-sum retirement payment.

Federal payments currently eligible for administrative offset are defined below.  The payments that are excluded from the administrative offset program are listed in Tables 1 and 2, which were revised by FMS in July 2008.

- Vendor/Miscellaneous Payments - Vendor and miscellaneous payments can be offset at 100 percent. Examples include expense and travel reimbursements. For some noncustodial parents, this could include payments received for services performed on a government contract or payments received from an agricultural subsidy.

- Federal Retirement Payments - Currently, FMS is offsetting retirement pay at a rate of 25 percent. If there is an income withholding in place, states should exclude the past-due case from retirement administrative offset.

---

[22] P.L. 104-134, April 26, 1996, Title II, Chapter 10; 31 U.S.C. 3701; 31 U.S.C. 3701, *et seq.*; and 31 CFR 285.1.
[23] Executive Order 13019 "Supporting Families: Collecting Delinquent Child Support Obligations," September 28, 1996.
[24] 31 CFR 285.1(e) and (h).

- <u>Federal Salary Payments</u> - Federal salary payments, while eligible for administrative offset, are not currently being intercepted for past-due child support. States should continue to use income withholding when dealing with noncustodial parents who receive federal salaries.

States should note that regulations at 45 CFR 303.100(e)(2) and (3) require income withholding after location of an employer.

### 3.   Payments Exempt from Administrative Offset

As stated above, some payments are excluded or exempt from administrative offset by federal law or by action of the Secretary of the Treasury. Those payments are listed in the tables that follow:[25]

---

[25]   Table information, revised May 2010, available at http://fms.treas.gov/debt/dmexmpt.pdf

| PAYMENTS EXEMPT BY FEDERAL LAW | | |
|---|---|---|
| **Payment Agency** | **Type of Payment** | **Statutory Exemption (U.S. Code)** |
| Department of Education Department of the Interior/ Bureau of Indian Affairs | Payments under a program administered by the Secretary of Education under Title IV of the Higher Education Act of 1965 | 31 U.S.C. ' 3716(c)(1)(C) |
| Department of Veterans Affairs | Payments of benefits under any law administered by the Secretary of Veterans Affairs, including: <br> * Pension programs <br> * Parents dependency and indemnity compensation programs <br> * Disability and death compensation <br> * Dependency and indemnity compensation <br> * Monetary educational assistance <br> * Monetary benefits under training (including work study allowances) and rehabilitation programs <br> * Special monetary benefits <br> * Life insurance payments <br> * Funeral and burial expenses <br> * Financial assistance for adapted housing and automobile equipment <br> * Minimum income widow <br> * Special allowance under 38 U.S.C. ' 1312 <br> * Attorney fees withheld from retroactive benefits for representation at the Board of Veterans Appeals <br> * Clothing allowance <br> * Apportionment funds <br> * Accrued benefits <br> * Child support withholdings <br> * Reimbursements for travel, medical, rehabilitation, and health care related needs and activities | 38 U.S.C. ' 5301(a) |
| Department of the Treasury | Payments under the tariff laws | 31 U.S.C. ' 3701(d) |
| Department of Labor/Social Security Administration | Payments under the Black Lung Benefits Act, other than payments under Part B | 30 U.S.C. ' 932(a) [inc 33 U.S.C. ' 916] |
| Department of Labor | Longshore and Workers Compensation Act payments <br> Energy Employees Occupational Illness Compensation Program payments <br> Federal Employees Compensation Program payments | 33 U.S.C. ' 916 <br> 42 U.S.C. ' 7385(a) <br> 5 U.S.C. ' 8130 |
| Railroad Retirement Board | Tier 2 Railroad Retirement benefit payments | 45 U.S.C. ' 231m |
| Department of Agriculture | Federal Crop Insurance indemnity payments | 7 U.S.C. ' 1509 |
| Department of Defense | Survivors benefits (military retirement) payments | 10 U.S.C. ' 1450(i) |
| Department of Defense | Medal of Honor pension payments | 38 U.S.C. ' 1562(c) |
| Social Security Administration/Department of Health and Human Services | Payments made under the Social Security Act, except to the extent provided under 31 U.S.C. ' 3716(c) [Debt Collection Improvement Act] | 31 U.S.C. ' 3701(d) |
| Federal Emergency Management Agency | Payments made under the Cerro Grande Fire Assistance Act (covering claims resulting from the wildfire in New Mexico in May 2000) | Public Law 106-246 |

| PAYMENTS EXEMPT BY FEDERAL LAW<br>FOR COLLECTION OF STATE NONTAX DEBTS AND PAST-DUE SUPPORT OBLIGATIONS | | |
|---|---|---|
| **Payment Agency** | **Type of Payment** | **Statutory Exemption (U.S. Code)** |
| See above | All payments listed above as Payments Exempt by Federal Law | See above |
| Railroad Retirement Board | Railroad Retirement benefit payments | 45 U.S.C. ' 231m, 31 U.S.C. ' 3716(h) |
| Social Security Administration | Payments made under the Social Security Act | 31 U.S.C. ' 3701(d), 31 U.S.C. ' 3716(h), 42 U.S.C. ' 407 and 42 U.S.C. ' 1383(d)(1) |
| Department of Labor/Social Security Administration | Payments under the Black Lung Benefits Act | 31 U.S.C. ' 3716(h), 30 U.S.C. ' 932(a) [incorporating 33 U.S.C. ' 916] |

| PAYMENTS EXEMPT BY ACTION OF THE<br>SECRETARY OF THE TREASURY (31 U.S.C. ' 3716(c)(3)(B)) | |
|---|---|
| **Payment Agency** | **Type of Payment** |
| All Agencies | Federal loan payments other than travel advances [see 31 CFR 285.5 (e)(2)(vii)] |
| Social Security Administration | Social Security Supplemental Security Income (SSI) benefit payments<br>Federal Old-Age, Survivors, and Disability Insurance (OASDI) benefits being offset internally by SSA |
| Department of Agriculture | Department of Agriculture, Food and Nutrition Services benefit payments made under the following programs:<br>* Food stamp program<br>* Nutrition assistance program for Puerto Rico<br>* Special supplemental nutrition program for women, infants, and children (WIC)<br>* WIC farmers market nutrition program<br>* National school lunch program<br>* Summer food service program<br>* Child and adult care food program<br>* Special milk program for children<br>* School breakfast program<br><br>Payments made under the following Rural Development Programs:<br>* Multi-Family Rental Assistance program<br>* Community Facilities direct loans and grants<br>* Single Family Housing-Homeownership direct loans and grants<br>* Single Family Housing-Technical Assistance grants<br>* Multi-Family Housing direct loans and grants<br>* Multi-Family Housing Preservation grants<br>* Business and Industry direct loans<br>* Intermediary Relending direct loans<br>* Rural Business Opportunity grants<br>* Rural Business Enterprise grants<br>* Rural Economic Development direct loans<br>* Water and Waste Disposal direct loans and grants |

10

| Federal Emergency Management Agency | Federal Emergency Management Agency payments under the following disaster relief and emergency assistance programs:<br>* Individual & family grant program<br>* Disaster housing<br>* Crisis counseling assistance & training<br>* Disaster unemployment assistance<br>* Cora Brown fund (disaster aid)<br>* Community disaster loan<br>* Public assistance to states & local governments<br>* Fire suppression assistance<br>* Urban search & rescue<br>* Assistance to Firefighters Grant Program |
|---|---|
| Department of Justice | Payments to eligible claimants pursuant to the September 11th Victims Compensation Fund |
| Pension Benefit Guaranty Corporation | Pension Benefit Guaranty payments as follows:<br>* Premium refunds to pension plans and plan sponsors<br>* Financial assistance to multi-employer plans<br>* Contractor bank payments to participants and beneficiaries |
| Department of Housing and Urban Development | Payments under the following programs:<br>* Annual Contributions for Operation of Low-Income Housing Projects<br>* Contributions for Low-Income Housing Projects (Development)<br>* Public Housing Modernization Program (Modernization)<br>* Lease Adjustments<br>* Section 8 Low-Income Housing Assistance (Rental Voucher Program<br>* Section 8 Counseling; Family Self Sufficiency (excluding payments for administrative costs)<br>* Revitalization of Severely Distressed Public Housing (Hope VI)<br>* Public and Assisted Housing Drug Elimination<br>* Family Investment Centers<br>* Indian Homeownership Program (Mutual Help Homeownership) grants<br>* Hope 3 Program (HOPE for Homeownership of Single Family Homes)<br>* Home Program (HOME Investment Partnerships)<br>* Section 8 Payment<br>* Rental Assistance Section 236<br>* Direct Loans for the Elderly or Handicapped Section 202<br>* Rental Supplements (Section 101)<br>* Safe Neighborhood Grants<br>* Drug Elimination Grants<br>* Two Homeless Assistance Programs (Supportive Housing, Emergency Shelter Grants, Shelter Plus Care Program and Section 8 Moderate Rehabilitation Single Room Occupancy Program)<br>* Home Equity Conversion Mortgage Program<br>* Flexible Subsidy Program<br>* Mark-to-Market Portfolio Reengineering Demonstration Program<br>* Community Development Block Grants to municipal governments, counties and townships<br>* Housing Opportunities for Persons with Acquired Immune Deficiency Syndrome (HOPWA)<br>* Grants to Historically Black Colleges and Universities<br>* Service Coordinator and Congregate Housing Services Programs |

| Department of Health and Human Services | Payments under the following:<br>* Vaccine Injury Compensation Program (other than death benefits)<br>* Tribal Law 93-638 Contracts/Compacts<br>* National Institutes of Health Clinical Center patients<br>* Ricky Ray Hemophilia Relief Fund Act of 1998 (Ricky Ray Fund)<br><br>Payments to small, non-profit organizations and/or indian tribes/tribal organizations serving areas for which no alternative organization is available to provide the grant-specific services under the following programs:<br>* Head Start<br>* Abandoned Infants<br>* Native American<br>* Transitional Living<br>* Refugee Assistance-Voluntary Agency<br>* Community Services Block Grant<br>* Refugee and Entrant Assistance<br>* Family Support Center and Gateway Demonstration<br>* Runaway and Homeless Youth<br>* Drug Education and Prevention for Homeless Youth<br>* Youth Initiative and Youth Gangs<br>* Older American Grants for Native Americans |
|---|---|
| Department of Interior | Payments made to Indian tribes and tribal organizations under the provisions of the Indian Self-Determination and Education Assistance Act |
| Department of Transportation | Payments made to Indian tribes and tribal organizations for the Indian Reservation Road program under the provisions of the Indian Self-Determination and Education Assistance Act (ISDEAA). |
| Department of Transportation | Tribal Transit Program payments made to Indian Tribes to provide public transportation on Indian reservations under the provisions of the Safe, Accountable, Flexible, Efficient, Transportation Equity Act: a Legacy of Users (SAFETEA-LU) |
| Public Defender Service for the District of Columbia | Salary payments in excess of 15% of disposable pay paid to employees of the Public Defender Service for the District of Columbia |

## C.   OFFSET PROCESS AND DISTRIBUTION OF COLLECTIONS

### 1.   Offset Hierarchy

Treasury's FMS operates the Treasury Offset Program[26] (TOP), which maintains a centralized TOP Master Debtor File. This file contains a list of individuals who owe debts to various agencies, including child support debts submitted by states to OCSE for federal income tax refund and administrative offset. Funds that are offset for repayment of past-due child support are sent by FMS to HHS' Program Support Center (PSC) which then, on behalf of OCSE, forwards the funds to the state or states that submitted the noncustodial parent to OCSE for offset.[27]

---

[26] For more information see: http://www.fms.treas.gov/debt/top.html.
[27] *See* 31 FCR 285.3(g) and 31 CFR 285.1(m)(2)

FMS applies payment offsets (both tax refund and administrative) to a noncustodial parent's federal debt(s) in the following order:

1. Federal tax debts (i.e., IRS)
2. Past-due child support TANF and non-TANF cases (weighted equally)
3. Other federal debts (i.e., education loan debts)
4. State tax debts

When FMS determines that a payment will be applied to a past-due child support debt, the state that is eligible to receive the offset is identified. If a noncustodial parent has been submitted by multiple states, the state with the earliest submission is first in the distribution of offsets. If a case was deleted and is then re-certified at a later date, the priority for that state's case is based on the date the re-certification was processed at OCSE.

If a state submitted an obligor for both past-due TANF and non-TANF debts, the case with the earliest submission is first in the distribution of offsets at OCSE. If a case was deleted and is then re-certified at a later date, the priority for that case is based on the date the re-certification was processed at FMS.

### 2. FMS Offset Notice

At the time the offset is processed, FMS issues an Offset Notice to the payee.[28] The Offset Notice states that FMS applied all or part of the noncustodial parent's federal payment to a debt that is owed to the government agency or agencies that are listed on the notice.

The Offset Notice identifies the source of the offset that is collected (e.g., federal income tax refund, vendor/miscellaneous payment, retirement, etc.), the amount of the payment offset, and the SSN of both the primary and secondary tax filers. It also provides State contact information supplied to OCSE by the submitting state through the submittal and update process.

### 3. Joint Return Offset/Injured Spouse Allocation

FMS will offset a refund from a joint income tax return to pay a past-due support obligation if either tax filer is certified as being legally responsible for providing support. If an offset for past-due child support is made against a joint federal income tax return, the non-obligated spouse may file an Injured Spouse Allocation Form 8379[29] with the IRS in order to recoup his or her portion of any tax refund. Currently, there is no time limit on the non-obligated spouse to file the Injured Spouse Allocation Form. The IRS encourages the filing of Form 8379 at the time of filing. This will permit the IRS to make direct refunds to the spouse and thus avoid adjustments to the state. If the noncustodial parent's spouse is not liable for the support debt under community property laws, the IRS will issue a pro rata refund to the spouse (upon the filing of an Injured Spouse Allocation Form) and the state will be required to reimburse IRS.[30]

---

[28] 31 CFR 285.1(o) and 285.3(e) and 45 CFR 303.72(e).
[29] Form available at http://www.irs.gov/pub/irs-pdf/f8379.pdf.
[30] 31 CFR 285.3(g).

13

4.        **Distribution of Collections from Offsets**

As detailed in Action Transmittal 07-05 (Instruction for the Assignment and Distribution of Child Support Under Sections 408(a)(3) and 457 of the Social Security Act), provisions in the DRA prospectively eliminate the pre-assistance assignment requirement and allow states to pass federal income tax refund offsets to the family first. These provisions, taken together, would increase the amount of child support distributed to families that no longer receive TANF cash assistance, and would also increase the amount of support available to families currently receiving TANF in those states that have TANF pass through policies.

Under former section 408(a)(3), families applying for TANF cash assistance were required to agree to a temporary and conditional assignment of support rights that accrued before the assistance period. The DRA prospectively eliminated the pre-assistance assignment requirement. Under the DRA, families are required to assign rights to child support owed during the assistance period only. In addition, states may elect to eliminate older pre-assistance assignments.

In addition, states were required, under former section 457(a)(2)(B)(iv), to apply federal tax refund collections to any arrearage owed to the state before applying them to arrearages owed to the family, and to distribute tax collections to arrearages only, and not to current support.

The federal tax offset rule, enacted as part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1966 (PRWORA) is an exception to the general "family first" distribution requirement that collections are distributed to the state first so long as a family is receiving TANF cash assistance, but to the family first once the assistance period has ended. PRWORA distribution rules required that federal tax offsets be applied first to conditionally and/or permanently assigned arrearages, then to arrearages owed to the family, but not to current support. The DRA permits states to elect additional options that, taken together, would allow payment of 100 percent of collected support to families.

States may elect to continue using PRWORA distribution rules or switch to the new DRA "family first" distribution of federal tax refund collections. If a state elects to implement the DRA federal tax offset option, federal tax refund collections will be distributed like any other collections. That is, tax collections would be: (1) distributed first to current support, and then to arrearages; and (2) distributed to state arrearages first while a family is receiving TANF, and to families first once the family stops receiving TANF. Federal tax offsets must be distributed within 30 calendar days of the date of receipt by the IV-D agency unless state law requires a post-offset appeal process and an appeal is filed on-time. Once an appeal is resolved, payment must be made within 15 calendar days of the date of resolution.[31] If an offset is made to satisfy non-TANF past-due support or satisfy amounts owed to the family from a refund based upon a joint return, the state may delay distribution until notified that the unobligated spouse's proper share of the refund has been paid or for a period not to exceed six months from notification of offset, whichever period is shorter.[32] On joint return offsets, FMS provides OCSE with an injured spouse indicator if an injured spouse allocation was processed against the noncustodial

[31] 45 CFR §302.32(b)(2)(IV).
[32] Section 464(a)(3)(B) and 45 CFR 303.72(h)(5).

14

parent's tax refund and paid prior to the offset, allowing states to distribute the joint tax refund offset sooner than six months.

Past-due support collected as a result of an administrative offset is to be distributed in accordance with the normal distribution procedures set forth in section 457 of the Act.[33]

### 5.   Adjustments of Collections from Offsets

There are several circumstances in which Treasury may need to reverse a state's collection after a tax refund or administrative offset has been made.  One is the processing of an injured spouse allocation as detailed above in section II.C.3.  Another occurs when there is a partial offset of a noncustodial parent's tax return refund and the tax filer cannot be located to return the remaining portion of the tax return payment due to an incorrect address or bank account number.  FMS must return the entire amount of the refund to the IRS.  If the correct address or bank account number is later found and the case has not been closed at FMS, the noncustodial parent's refund will be re-offset and Treasury will send any remaining portion of the refund to the noncustodial parent.

States and OCSE are advised by FMS of any offset adjustments through the weekly collection and adjustment process.[34]

### 6.   FMS Offset Service Fees[35]

The fees charged for each tax and administrative offset by FMS are based on the costs of operating the program and are deducted directly from collections. An offset fee is charged only when an offset is taken. The fee amount is specific to each offset program, and is determined by FMS every fiscal year. States are informed of the service fee amount prior to the start of the new federal fiscal year.

If FMS applies offset money collected from a noncustodial parent to both a TANF and a non-TANF case, FMS charges a service fee to both cases.  This same fee allocation applies if the noncustodial parent has cases in more than one state where the offset was distributed.

Although the amount received by the state for a tax refund or administrative offset is the collection minus the fee, states must credit the noncustodial parent as having paid the full amount.[36]

### 7.   State Payments

State payments are reported when a state refunds money to an individual because of an erroneous tax refund offset.  OCSE forwards this information to Treasury so the amount the state refunded

---

[33] *See* AT-98-24 dated August 19, 1998.
[34] *See* Federal Offset User's Guide sections 4.3.1 through 4.3.2 and Chart F-4, Collection and Adjustment Record Layout
[35] *See* 31 CFR 285.1(l) and 285.3(h)
[36] *See* 45 CFR 303.72(i).

to the noncustodial parent (or both parties if the offset is from a joint return) can be acknowledged by the IRS prior to issuing a payment it may determine is owed back to the taxpayer. For example, if the state reports to OCSE a $500 state payment against a $1,000 tax refund offset, IRS will take into consideration the $500 the state has already refunded and will only adjust the original collection above and beyond that amount. State payment reporting is critical to prevent unnecessary adjustments against a state's future collections.

A state payment should be reported when:

- A state-submitted case is certified erroneously and a tax refund offset occurs.
- An incorrect arrearage amount is reported to OCSE and a tax refund offset occurs.
- A noncustodial parent makes a payment resulting in a decrease in the arrearage amount that is owed and a tax refund offset occurs before the update is processed.
- There is an audit/administrative review that results in a decrease in the arrearage amount owed and a tax refund offset occurs before the update is processed.
- A case is closed by the state but FMS processes the tax refund offset before the state is able to close the case at OCSE and FMS.

The following guidelines were also developed to assist states in determining when a state payment should be made to a noncustodial parent if there is a discrepancy in the identification of the taxpayer certified for tax refund offset and/or the taxpayer actually offset.

- Situation 1: If the state simply identifies the wrong SSN for an individual, the state should make a prompt refund to the taxpayer, delete the case, and report a state payment to OCSE. For example, William Green with SSN \*\*\*-\*\*-4444 was submitted instead of the actual noncustodial parent William Green with SSN \*\*\*-\*\*-7777. In this instance the wrong SSN has been identified for the noncustodial parent and the taxpayer being offset is entitled to a prompt refund by the state.

- Situation 2: The second type occurs when a person other than the noncustodial parent files his/her return using the noncustodial parent's SSN. One such example is when the state submits John Doe, SSN \*\*\*-\*\*-5555 and his current spouse, Mary Doe, files her return separately using the IRS label mailed to John Doe. If Mary files her return prior to John, her refund will be offset because the IRS computer will read his label. Since the name on the label is the person submitted for offset, even though the return is for Mary Doe, FMS will offset her refund and forward the money to the submitting state. In this situation, the state should not refund to the taxpayer but should refer Mary Doe to the IRS who must correct their records, adjust the state's collection, and make a refund to her.

  Another example of this particular type involves a father/son relationship. If James Smith, Jr. files using his father's SSN and is offset, but is not the noncustodial parent, the state should not make a refund to him. Instead James Smith, Jr. should be referred to IRS so his tax account can be updated correctly. Again, IRS would adjust the state's collection and send a refund to James Smith, Jr. Then when James Smith, Sr. files his return, it can be offset.

16

■  Situation 3:  Occasionally two persons are assigned the same SSN in error by the Social
Security Administration (SSA).  If this is the situation, the first person filing his/her
return will be offset.  If, however, that person is not the noncustodial parent, the state
should not make a refund to the taxpayer.  Instead, the person should be referred to IRS
who will assign a temporary filing number, credit the taxpayer's account with the refund,
and have the person obtain a new SSN from SSA.  IRS will adjust the state's collection
and refund the taxpayer's money, correcting the offset.  Consequently, when the
noncustodial parent files his return, the refund will be eligible for offset.

Please note:  Offsets disbursed to the custodial party are not state payments nor should the state
refund monies on joint tax return offset cases if the non-obligated spouse is seeking a refund.
The non-obligated spouse or taxpayer should be referred to the IRS for assistance.  Instructions
for non-obligated spouses who wish to file a claim are also provided in the PON (Exhibit B).

### D.    FEDERAL PASSPORT DENIAL PROGRAM

The passport denial provision was added in Section 370 of PRWORA and amended (effective
October 1, 2006) in Section 7303 of DRA.  Section 452(k) of the Act requires that, if the
Secretary of HHS receives a certification that a noncustodial parent owes arrearages in an
amount exceeding the federally-mandated threshold, currently $2,500, the Secretary shall
transmit the certification to the Secretary of State who shall refuse to issue a passport to such
individual.  In other words, the Department of State (DoS) denies passports at the time of
application for anyone certified by OCSE and reported to DoS.[37]  In addition, under the statute,
the Secretary of State may take action to revoke, restrict or limit a passport previously issued to
such an individual.

Section 454(31) of the Act makes participation in the Passport Denial program a IV-D state plan
requirement.  All states are required to have in effect a procedure to certify to OCSE individuals
who owe past-due support exceeding $2,500.  States are also required to provide notice to
individuals and give them an opportunity to contest the delinquency determination.

### 1.    Submittal and Removal Criteria

When a state submits a case to OCSE with arrearages exceeding the federally-mandated
threshold (currently $2,500) or the state submits an increase to an existing case that causes the
arrearages to reach an amount exceeding the threshold, OCSE automatically forwards the case to
DoS for passport denial unless the state certifying the arrearage amount excludes the case from
this remedy.  If the noncustodial parent's date of birth (DOB) or place of birth (POB) at SSA is
invalid or the current or previously submitted noncustodial parent's name(s) and SSN do not
verify or match at SSA, DoS will not accept the case and the noncustodial parent will not be
eligible for passport denial.  OCSE returns a warning code to states in their rejected case
submission and update file indicating that the noncustodial parent record did not verify and is
therefore not eligible for the passport denial program as submitted.  The noncustodial parent
record is still maintained and updated at OCSE, remains eligible for other appropriate remedies,

---

[37] *See also* Department of State regulations, 22 CFR 51.60(a)(2).

and the state can provide additional names in its future update files without having to recertify the case again.

Although a noncustodial parent is automatically removed from passport denial when his/her arrears balance is reduced to zero, a noncustodial parent is not automatically removed when the debt drops below $2,500. The decision to remove a noncustodial parent is based on state policies and procedures. The state must use an exclusion indicator when it wishes to remove a noncustodial parent from the passport denial program. If the state has multiple cases for the noncustodial parent, it must add an exclusion indicator to both cases. If more than one state certified the noncustodial parent for passport denial, all of the states must withdraw the individual from the program before a passport can be issued. As with the offset programs, only the submitting state(s) can delete a noncustodial parent from the passport denial process.

Note: Once a noncustodial parent is removed from the passport denial program and receives his or her passport, in most instances it will be either 5 or 10 years before he or she can be denied again. The tourist passport book and the passport card remain valid for 10 years, while diplomatic, official or regular no-fee (government) passports are valid for 5 years. Individuals can possess both the tourist passport book and passport card in addition to a diplomatic, official or regular no-fee passport, all of which are subject to the same adjudication. States are encouraged to carefully review cases and situations before withdrawing noncustodial parents from the denial process.

State child support agencies may continue to submit passport denial cases electronically to OCSE for forwarding to the DoS even after a bankruptcy has been filed. A U.S. passport is not property of the debtor and, therefore, is not "property of the estate" which would be subject to bankruptcy automatic stay provisions [11 U.S.C. 362]. DoS regulations provide that "A passport shall at all times remain the property of the United States and shall be returned to the Government upon demand."[38]

## 2.    Revocation

Currently, a noncustodial parent's passport can only be revoked (i.e., physically taken) any time the passport agency/DoS has the passport in hand, such as when they are:

- Renewing an existing passport
- Adding pages to an existing passport
- Repairing/reissuing a damaged passport
- Changing a name or updating a picture
- Accepting an existing passport as proof of identification

---

[38] 22 CFR 51.7; *see also* PIQ-07-04 dated July 23, 2007, Additional Information Regarding Enforcing Child Support when the noncustodial parent is in Bankruptcy.

### 3.    Limited Validity Passports

Limited validity passports may be issued for direct and immediate return only to the United States when a passport is denied or revoked outside of the U.S. Every U.S. citizen is entitled to return to the U.S. even if they cannot make satisfactory payment arrangements with the state(s) to repay their past-due child support when their passport is denied. The length of time the limited validity passport is valid can vary from a few days to several months and is determined by the U.S. Embassy or Consulate officer. If the noncustodial parent wishes to travel again internationally, they must apply for a replacement passport and pay the regular fee. The new application will be subject to the same adjudication as before.

### 4.    DoS Passport Application Denial Letter

DoS provides written notice to any person whose application for issuance of a passport is denied or revoked. The notification provides the specific reasons (e.g., past-due child support) for the denial or revocation and instructions on how the noncustodial parent can notify the passport agency once they make appropriate arrangements for payment with the submitting state(s) IV-D agency.[39]

### 5.    Customer Service

A noncustodial parent who contacts OCSE after receiving a PON and/or who has been denied a passport will be referred to the submitting state(s). It is the state's responsibility to handle complaints and to make arrangements with noncustodial parents for passport issuance. DoS can only receive changes to a noncustodial parent's status from OCSE. Release documentation provided by any entity other than OCSE will not be accepted by DoS or a passport agent.

As noted above, when the passport is denied, the applicant is instructed in the passport application denial letter provided by DoS to contact the state CSE agency to make appropriate arrangements for satisfaction of the arrearage. Included with this letter is a listing of all state CSE agencies and the contact information the state has provided to OCSE.[40]

If the passport applicant states they have never had a child support case, or is unsure which state submitted the case, the applicant must contact the IV-D agency in his or her state of residence. If the contacted state does not have a case for the applicant in its system, the state will contact the OCSE Federal Collections and Enforcement Unit. OCSE will determine if the applicant has a case in another state and provide contact information for the submitting state(s) or if no case exists, request that the caller fax the DoS passport application denial letter along with their DOB, POB, SSN and a contact phone number to the Federal Collections and Enforcement Unit. OCSE will inform DoS of the erroneous denial so that DoS can take the appropriate action.

---

[39] *See* 22 CFR 51.65(a).
[40] *See* State Child Support Enforcement Agencies, Department of State Contacts at
http://www.acf.hhs.gov/programs/cse/newhire/fop/dos_contacts.htm.

### E.    MULTISTATE FINANCIAL INSTITUTION DATA MATCH (MSFIDM)

States are required to enact laws enabling IV-D agencies to conduct quarterly data matches with financial institutions transacting business in the state.[41] The Child Support Performance and Incentive Act of 1998, grants OCSE the authority to coordinate data matching with financial institutions conducting business in more than one state.  These matches are intended to identify assets of noncustodial parents who owe past-due support.[42]

In July 1999, MSFIDM began accessing the federal offset files on a weekly basis to select eligible noncustodial parents and to match their account data with multistate financial institutions (MSFIs) account data.  MSFI account matches are sent to the states through the Federal Case Registry (FCR).

OCSE performs quarterly data matches with MSFIs.  These matches utilize the same case information files that are used for the Federal Offset Program.  Please visit the OCSE website at http://www.acf.hhs.gov/programs/cse/newhire/fop/msfidm.htm for further information.

### F.    FEDERAL INSURANCE MATCH PROGRAM

The DRA amended Section 452 of the Social Security Act to authorize comparisons of information concerning individuals owing past-due support with information maintained by insurers (or their agents) concerning insurance claims, settlements, awards, and payments.[43]  In June 2007, the insurance match program became eligible to access the OCSE Debtor Master Files on a weekly basis to select eligible noncustodial parents to be matched with insurance claims data.

The insurance match program is optional for state agencies and insurance companies or their agents.  Only noncustodial parents in states that opt to participate in the insurance match program are eligible for the data match.  No additional fees are charged by the Federal Tax Refund Offset Program to states for providing eligible noncustodial parents and participating in the insurance match program.

Criteria for submission of debts by participating states are the same as those used for the Federal Offset Program.  States may exclude noncustodial parents on a case-by-case basis and may exclude sources of claims data (e.g., matches from State Workers Compensation Agencies, etc.).[44]  Participating states also have the ability to establish state-specific arrearage thresholds that are associated with the Insurance Match Program.

Additional information including how to participate in the insurance match program may be found at http://www.acf.hhs.gov/programs/cse/newhire/insurance/insurance.htm.

---

[41] Section 466(a)(17) of the Act.
[42] Section 406 of the Child Support Performance and Incentive Act of 1998, P.L. 105-200, July 16, 1998 and section 452(l) of the ACT.
[43] See P.L. 109-171, section 7306, February 8, 2006, and 42 USC 652(l) (to be re-designated section 42 USC 652(m).
[44] See Dear Colleague Letters 07-31 and 08-33 for additional information.

III.     SINGLE AND INTERSTATE PROCEDURES

   A.      PROCEDURES FOR CONTESTING SINGLE-STATE CASES

These procedures cover cases that involve only one state.  The regulation for contesting single-state cases is found at 45 CFR 303.72(f).  Procedures for cases that involve more than one state can be found in Section III.B.3. of this Action Transmittal.

Upon receipt of a complaint from a noncustodial parent regarding either a PON or a federal income tax refund or administrative payment which has been offset, the state must review the case and attempt to resolve the complaint.  If the taxpayer requests an administrative review, the IV-D agency must send a notice to the noncustodial parent and in non-TANF and Medicaid-only cases, the custodial party regarding the time and place of the administrative review.  The state must conduct the review to determine the validity of the complaint.  If the complaint concerns a joint federal income tax refund that has not been offset, the IV-D agency must inform the noncustodial parent that FMS will notify the noncustodial parent's spouse at the time of offset regarding the steps to take to secure his or her proper share of the refund.  If the complaint concerns a joint tax refund which has already been offset, the IV-D agency must also refer the noncustodial parent to the IRS for steps the spouse may take to secure his or her proper share of the refund.

If the administrative review results in a deletion of, or decrease in the amount referred for offset, the IV-D agency must notify OCSE using the procedures for reporting updates.  If, as a result of the administrative review, an amount which has already been offset is found to have exceeded the amount of past-due support owed, the IV-D agency must take steps to refund the excess amount to the noncustodial parent promptly and report to OCSE a state payment.

   B.      INTERSTATE CASES

      1.      Multiple Orders and Interstate Communication

There are two methods available to states to exchange information regarding federal offsets.  The preferred method is to use CSENet to exchange federal offset information.  For further details regarding CSENet, please see the CSENet Interface Guidance Document.  In addition, there are the interstate transmittal forms (OCSE-AT-08-02, Distribution of Federally Approved Standard Interstate Child Support Enforcement Forms).[45]

When determining the arrears amount for certification, the submitting state should provide the arrearage that is current at the time of certification.  If there are multiple orders in the case being certified and a tribunal has entered a Determination of Controlling Order (DCO) under the Uniform Interstate Family Support Act (UIFSA)[46], the amount of the arrears determined pursuant to the UIFSA registration action is binding upon all other states.  In multiple order cases, a state that issued one of the multiple orders used in the DCO may certify the arrears owed

---

[45] *See* OCSE Web site: http://www.acf.hhs.gov/programs/cse/pol/AT/2008/at-08-02.htm.
[46] *See* section 207 of UIFSA.

under their order, as determined by the tribunal issuing the controlling order determination, but their certification should clearly indicate that they are only certifying their portion of the total arrears.

### 2.    Submitting Debts on Interstate Cases

The initiating state (the state in which the public assistance assignment or nonassistance application for IV-D services has been filed) must submit the past-due support for federal tax refund offset and, as the state determines to be appropriate, past-due support for passport denial, MSFIDM, administrative offset and federal insurance match. We prefer the initiating state to take this action. However, in the best interest of the child and family, OCSE does not prohibit a responding state from submitting past-due support using the administrative offset, passport denial, MSFIDM and federal insurance match remedies. The state must also inform any other state enforcing a case when a case is submitted and when it receives an offset amount from FMS.[47] If the case submitted is based upon another state's support order, the state submitting the case must communicate with the state that has the order. The submitting state should verify arrears and obtain a copy of the order (including any modifications) and the payment record prior to submitting the noncustodial parent for certification. Interstate debts may be certified only by a state that has taken an assignment under section 408(a)(3), 471(a)(17) or 1912(a)(1)(A) of the Act, or has taken an application for IV-D services. The submitting state must comply with the other state's laws regarding offsets. Several states have been involved in litigation that has resulted in the imposition of specific safeguards to prevent the wrongful interception of taxpayers' refunds. These requirements for expanded notice and hearing procedures may affect the enforcement of any child support order issued within the state. 45 CFR 303.72(g) provides for an administrative review in either the submitting state or the state that issued the order upon request by the noncustodial parent.

### 3.    Procedures for Contesting Interstate Cases

If the noncustodial parent requests an administrative review in the submitting state, the IV-D agency must first follow the same procedures set forth in Section III.A. of this Action Transmittal, Procedures for Contesting Single-State Cases.[48] In particular, the submitting state should attempt to resolve the complaint if possible by reviewing its computation of the arrearage amount submitted for offset and the underlying documentation, as well as any new evidence provided by the noncustodial parent.

If the submitting state cannot resolve the complaint, the noncustodial parent may request a review in the state that issued the order. The submitting state must notify the state with the order within 10 days of the noncustodial parent's request. The submitting state must also provide all necessary information (a copy of the order and any modifications, a copy of the payment record or the custodial parties' affidavit, and the custodial parties' address for a non-TANF or Medicaid-only case). States should use the Child Support Enforcement Transmittal Form #1- Initial

---

[47] 31 CFR 285.1(d)(2) and 285.3(c)(6)
[48] 45 CFR 303.72 (g).

Request to refer a case to the state with the order for the purposes of conducting an administrative review.

The state with the order must send a notice to the noncustodial parent of the time and place of the administrative review. In non-TANF or Medicaid-only cases, the custodial party must also be notified. The state must conduct the review and make a decision within 45 days of receiving the information from the submitting state. The decision must be based on the accuracy of the arrears amount and whether or not it is legally enforceable under state law.

If the administrative review results in a deletion of, or decrease in, the amount referred for offset, the state with the order must notify OCSE within the same timeframes set out for intrastate cases. If the offset has already occurred, the state with the order must notify the submitting state of its decision, and the IV-D agency in the submitting state must take steps to refund any excess amount offset to the noncustodial parent promptly. The state may not delay refunds of excess amounts withheld pending receipt of the offset from the FMS. The submitting state is bound by the outcome of the administrative review conducted by the state with the order. Please note, however, that if the submittal is based upon orders from two states, the reviewing state should only verify the arrearage that accrued under its own order. Such submittals will usually require two separate administrative reviews if the taxpayer challenges the entire submittal.

In computing incentives, if the case is referred to the state with the order for an administrative review, collections made as a result of federal income tax refund or administrative offset will be treated as having been collected in full by both the submitting state and the state with the order.[49] The submitting state is liable to FMS for any adjustments and both states will have to reflect such adjustments when reporting collections to OCSE.[50]

## IV.    REFERENCES

Code of Federal Regulations
http://www.gpoaccess.gov/CFR/

Department of State Website
http://www.travel.state.gov/

Federal Offset Program User Guide
http://www.acf.hhs.gov/programs/cse/newhire/library/fop/fop.htm

Financial Management Service Website
http://www.fms.treas.gov/

Internal Revenue Service Website
http://www.irs.gov/

---

[49] 45 CFR 303.72(g)(8).
[50] *See* 31 CFR 285.1(m)(2) and 31 CFR 285.3(g).

OCSE Home Page
http://www.acf.hhs.gov/programs/cse/

Social Security Act
http://www.socialsecurity.gov/OP_Home/ssact/title04/0400.htm

Thomas: Legislative information from the Library of Congress
http://thomas.loc.gov/

United States Code
http://www.gpoaccess.gov/uscode/index.html


**V.     EXHIBITS**

## A.    ANNUAL CERTIFICATION LETTER

**Annual Certification Letter**

**Use State Letterhead**

Date:

Office of Child Support Enforcement
Department of Health and Human Services
Federal Collections and Enforcement
370 L'Enfant Promenade, S.W.
Washington, D.C. 20447

From: _____, _____, _____
       State IV-D Director        Title             Jurisdiction

Subject: Request for Collection of Delinquent Child and/or Spousal Support, Denial of Passport Application, Multistate Financial Institution Data and Insurance Matches, using the Federal Collections and Enforcement Process

I certify that every request for offset collection meets the following requirements:

1.  (A) For Federal Tax Refund Offset assistance cases, the amount of the delinquency under a court or administrative order for child and/or spousal support is not less than $150 and has been assigned to the State.

    (B) For Federal Tax Refund Offset non-assistance cases, the amount of the delinquency under a court or administrative order for child support is not less than $500 and the State is enforcing the order under section 454(4)(A)(ii) of the Social Security Act (the Act).

    (C) For Administrative Offset cases, the amount of the delinquency under a court or administrative order for support (for a child and the parent with whom the child is living) is not less than $25 and there has been an assignment of the support rights to the State or the State is enforcing the order under section 454(4)(A)(ii) of the Act.

---

The Paperwork Reduction Act of 1995
An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information, unless it displays a currently valid OMB control number. This information collection is expected to take .4 hours per response. OMB control number: 0970-0161, Expiration date 06/30/2013.

---

2. This agency has verified the accuracy of the arrears, has a copy of the order and any modifications, has a copy of the payment record or an affidavit signed by the custodial party attesting to the amount of support owed and has, in non-assistance cases, the custodial parties' current, or last known, address.

3. The Pre-Offset Notice that we will issue to the noncustodial parent meets the requirements set forth in the regulations, or the address information provided for the noncustodial parent was verified for the notice that OCSE will issue.

I certify that every request for passport denial meets the following requirements:

1. The amount of the child and/or spousal support arrearage owed by the individual exceeds $2,500.

2. This agency has verified the accuracy of the arrears, has a copy of the order and any modifications, and has a copy of the payment record or an affidavit signed by the custodial party attesting to the amount of support owed.

3. The Pre-Offset Notice that we will issue to the noncustodial parent meets the requirements set forth in section 454(31) of the Act, or the address information provided for the noncustodial parent was verified for the notice that OCSE will issue.

I certify that every request for multistate financial institution data match and/or insurance match meets the following requirements:

1. There is a delinquent amount of child and/or spousal support owed.

2. The amount of the delinquency is greater than zero.

I certify that appropriate administrative, technical and physical safeguards are in place to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity, which could result in substantial harm, embarrassment, inconvenience or unfairness to any individual on whom information is maintained.

---

Information for Pre-Offset and/or Financial Management Services (FMS) Offset Notice:

We request that OCSE mail Pre-Offset Notices to noncustodial parents.____Yes_____No

The Paperwork Reduction Act of 1995
An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information, unless it displays a currently valid OMB control number. This information collection is expected to take .4 hours per response. OMB control number: 0970-0161, Expiration date 06/30/2013.

Which address type should be used on your State's OCSE-issued Pre-Offset Notice and/or Treasury's FMS Offset Notice?

Choose one of the following for each category:

OCSE-Issued Pre-Offset Notice:

_____ Use State IV-D Return Address/ State IV-D Contact Address
_____ Use Local Return Address/ Local Contact Address
_____ Use State IV-D Return Address/ Local Contact Address
_____ N/A; our State issues its own Pre-Offset Notice

FMS Offset Notice:
_____ Use State Contact Address
_____ Use Local Contact Addresses

State IV-D Address:

All States must provide a State IV-D address, whether or not Local addresses are used. (Please note that the State IV-D address indicated below may be used as the contact information included in one or both of the notices sent).

_____
_____
_____
_____

Telephone: (_____) _____ - _____

Telephone 2 (Optional): (_____) _____ - _____

The Paperwork Reduction Act of 1995
An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information, unless it displays a currently valid OMB control number. This information collection is expected to take .4 hours per response. OMB control number: 0970-0161, Expiration date 06/30/2013.

How long does your State want OCSE to hold new cases from the Pre-Offset Notice date before forwarding to FMS for offset certification?

       \_\_\_ 30 days
       \_\_\_ 45 days
       \_\_\_ 60 days
       \_\_\_ 90 days

Signature of IV-D Director or Designee _____
Agency Contact _____
Agency Contact's Phone Number _____
Agency Contact's Email Address _____

The Paperwork Reduction Act of 1995
An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information, unless it displays a currently valid OMB control number. This information collection is expected to take .4 hours per response. OMB control number: 0970-0161, Expiration date 06/30/2013.

## B.   OCSE PRE-OFFSET NOTICE

CHILD SUPPORT ENFORCEMENT DIVISION
DEPARTMENT OF REVENUE MS 01550
550 Any St
Anytown AK 99999
INSTATE  800.000.000

CHILD SUPPORT ENFORCEMENT DIVISION
600 Any Blvd
 Anytown AK 99999
 PHONE(S):  907.999.9999

**CURRENT DATE**                      ** CONTACT ADDRESS ABOVE **

                                    MR AND/OR MS JOHN DOE
                                    3331 ANYSTREET BLVD
                                    ANYTOWN USA 99999-0123

| SSN | CASE NUMBER | LOCAL ID | PAST DUE AMOUNT CLAIMED |
|-----|-------------|----------|-------------------------|
| ***-**-3456 | 33331Z97RN1 | 001 | $520 (NON-TANF) |

The agency identified above has determined that you owe past-due child and/or spousal support.  Our records show that you owe at least the amount shown above.  If your case was submitted to the United States Department of the Treasury for collection in the past, this amount is subject to collection at any time by Administrative Offset and/or Federal Tax Refund Offset.  If your case has not already been submitted to the United States Department of the Treasury and you do not pay in full within 30 days from the date of this notice, this amount will be referred for collection by Administrative Offset and/or Federal Tax Refund Offset.  Under Administrative Offset (31 U.S.C.3716), certain Federal payments that might otherwise be paid to you will be intercepted, either in whole or in part, to pay past-due child and/or spousal support.  Under Federal Tax Refund Offset (42 U.S.C.664;26 U.S.C.6402), any Federal Income Tax Refund to which you may be entitled will be intercepted to satisfy your debt. The amount of your past-due support will also be reported to consumer reporting agencies.

If you owe or owed arrearages of child support in an amount exceeding $2,500, the agency identified above will certify your debt to the State Department pursuant to 42 USC 654(31).  Once you are certified, the Secretary of State will refuse to issue a passport to you, and may revoke, restrict or limit a passport that was previously issued.

Your debt will remain subject to Federal Tax Refund Offset, Administrative Offset, and/or passport certification until it is paid in full.  Important:  If you owe current support, any further arrears accruing due to payments missed may be added to your debt and will be subject to collection by Federal Tax Refund Offset and/or Administrative Offset now or in the future without further notice.  To determine additional amounts owed or the total amount past-due which the agency has submitted for collection, you may contact us at the address or phone number listed above.

You have a right to contest our determination that this amount of past-due support is owed, and you may request an administrative review.  To request an administrative review, you must contact us at the address or phone number listed above within 30 days of the date of this notice.  If your support order was not issued in our state, we can conduct the review or, if you prefer, the review can be conducted in the state that issued the support order.  If you request, we will contact that state within 10 days after we receive your request and you will be notified of the time and place of your administrative review by the state that issued the order.  All requests for administrative review, or any questions regarding this notice or your debt, must be made by contacting the agency identified above.

If you are married, filing a joint income tax return, and you incurred this debt separately from your spouse, who has no legal responsibility for the debt and who has income and withholding and/or estimated tax payments, your spouse may be entitled to receive his or her portion of any joint Federal tax refund. If your spouse meets these criteria, he or she may receive his or her portion of the joint refund by filing a Form 8379 - Injured Spouse Claim

and Allocation. Form 8379 should be attached to the top of the Form 1040 or 1040A when you file, or be filed according to other instructions as indicated on the Form 8379.

C.     **TREASURY REGULATIONS – Federal Income Tax Refund Offset**

```
[Code of Federal Regulations]
[Title 31, Volume 2]
[Revised as of July 1, 2009]
From the U.S. Government Printing Office via GPO Access
[CITE: 31CFR285.3]

[Page 115-118]

            TITLE 31--MONEY AND FINANCE: TREASURY

       CHAPTER II--FISCAL SERVICE, DEPARTMENT OF THE TREASURY

PART 285_DEBT COLLECTION AUTHORITIES UNDER THE DEBT COLLECTION IMPROVEMENT
ACT

            Subpart A_Disbursing Official Offset

Sec. 285.3  Offset of tax refund payments to collect past-due support.

    (a) Definitions. For purposes of this section:
    Debt as used in this section is synonymous with the term past-due
support unless otherwise indicated.
    Debtor as used in this section means a person who owes past-due
support.
    FMS means the Financial Management Service, a bureau of the
Department of the Treasury.
    HHS means the Department of Health and Human Services, Office of
Child Support Enforcement.
    IRS means the Internal Revenue Service, a bureau of the Department
of the Treasury.
    Past-due support means the amount of support, determined under a
court order, or an order of an administrative process established under
State law, for support and maintenance of a child, or of a child and the
parent with whom the child is living, which has not been paid, as
defined in 42 U.S.C. 664(c).
    State means the several States of the United States. The term
``State'' also includes the District of Columbia, American Samoa, Guam,
the United States Virgin Islands, the Commonwealth of the Northern
Mariana Islands, and the Commonwealth of Puerto Rico.
    Tax refund offset means withholding or reducing a tax refund payment
by an amount necessary to satisfy a debt owed by the payee(s) of a tax
refund payment.
    Tax refund payment means any overpayment of Federal taxes to be
refunded to the person making the overpayment after the IRS makes the
appropriate credits as provided in 26 U.S.C. 6402(a) and 26 CFR 6402-
3(a)(6)(i) for any liabilities for any Federal tax on the part of the
person who made the overpayment.
    (b) General rule. (1) Past-due support will be collected by tax
refund offset upon notification to FMS in accordance with 26 U.S.C.
6402(c), 42 U.S.C. 664 and this section. Collection by offset under 26
U.S.C. 6402(c) is a collection procedure separate from the collection
procedures provided by 26 U.S.C. 6305 and 26 CFR 301.6305-1, relating to
```

31

the assessment and collection of certain child and spousal support liabilities. Tax refund offset may be used separately or in conjunction with the collection procedures provided in 26 U.S.C. 6305, as well as other collection procedures.

(2) FMS will compare tax refund payment records, as certified by the IRS, with records of debts submitted to FMS. A match will occur when the taxpayer identifying number (as that term is used in 26 U.S.C. 6109) and name of a payment certification record are the same as the taxpayer identifying number and name of a delinquent debtor record. When a match occurs and all other requirements for tax refund offset have been met, FMS will reduce the amount of any tax refund payment payable to a debtor by the amount of any past-due support debt owed by the debtor. Any amounts not offset will be paid to the payee(s) listed in the payment certification record.

(c) Notification of past-due support--(1) Past-due support eligible for tax refund offset. Past-due support qualifies for tax refund offset if:

(i)(A) There has been an assignment of the support obligation to a State and the amount of past-due support is

[[Page 116]]

not less than $25.00, or such higher amount as HHS rules may allow, whichever is greater; or

(B) A State agency is providing support collection services under 42 U.S.C. 654(4) and the amount of the past-due support is not less than $500.00; and

(ii) A notification of liability for past-due support has been received by FMS as prescribed by paragraphs (c)(2) or (c)(3) of this section.

(2) Notification of liability for past-due support and transmission of information to FMS by HHS. States notifying HHS of past-due support shall do so in the manner and format prescribed by HHS. The notification of liability shall be accompanied by a certification that the State has complied with the requirements contained in paragraph (c)(4) of this section and with any requirements applicable to the offset of Federal tax refunds to collect past-due support imposed by State law or procedures. HHS shall consolidate and transmit to FMS the information contained in the notifications of liability for past-due support submitted by the States provided that the State has certified that the requirements of paragraph (c)(4) of this section have been met.

(3) Notification of liability for past-due support transmitted directly to FMS by States. States must notify HHS of past-due support in accordance with the provisions of paragraph (c)(2) of this section unless HHS rules authorize notification to FMS directly. If authorized by HHS rules, States may notify FMS directly of past-due support. States notifying FMS directly of past-due support shall do so in the manner and format prescribed by FMS. The notification of liability shall be accompanied by a certification that the State has complied with the requirements contained in paragraph (c)(4) of this section and with any requirements applicable to the offset of Federal tax refunds to collect past-due support imposed by State law or procedures. FMS may reject a notification of past-due support which does not comply with the requirements of this section. Upon notification of the rejection and the reason for rejection, the State may resubmit a corrected notification.

(4) Advance notification to debtor of intent to collect by tax refund offset. The State, or HHS if the State requests and HHS agrees,

32

is required to provide a written notification to the debtor, pursuant to the provisions of 42 U.S.C. 664(a)(3) and 45 CFR 303.72(e), informing the debtor that the State intends to refer the debt for collection by tax refund offset. The notice also shall:

(i) Instruct the debtor of the steps which may be taken to contest the State's determination that past-due support is owed or the amount of the past-due support;

(ii) Advise any non-debtor who may file a joint tax return with the debtor of the steps which a non-debtor spouse may take in order to secure his or her proper share of the tax refund; and

(iii) In cases when a debt is being enforced by more than one State, advise the debtor of his or her opportunities to request a review with the State enforcing collection or the State issuing the support order as prescribed by the provisions of 45 CFR 303.72(g).

(5) Correcting and updating notification. The State shall, in the manner and in the time frames provided by FMS or HHS, notify FMS or HHS of any deletion or net decrease in the amount of past-due support referred to FMS, or HHS as the case may be, for collection by tax refund offset. The State may notify FMS or HHS of any increases in the amount of the debt referred to FMS for collection by tax refund offset provided that the State has complied with the requirements of paragraph (c)(4) of this section with regard to those debts.

(6) Collection of past-due support enforced by multiple States. When a State has knowledge that the debt is being enforced by more than one State, the State notifying FMS, or HHS as the case may be, of the debt shall inform any such other State involved in enforcing the debt when it receives the offset amount.

(d) Priorities for offset. (1) As provided in 26 U.S.C. 6402, a tax refund payment shall be reduced in the following order of priority:

(i) First, by the amount of any past-due support which is to be offset under 26 U.S.C. 6402(c) and 42 U.S.C. 464;

[[Page 117]]

(ii) Second, by the amount of any past-due, legally enforceable debt owed to a Federal agency which is to be offset under 26 U.S.C. 6402(d), 31 U.S.C. 3720A and Sec. 285.2 of this part; and

(iii) Third, by the amount of any past-due, legally enforceable debt owed to States (other than past-due support) which is to be offset under 26 U.S.C. 6402(e) or 26 U.S.C. 6402(f).

(2) Reduction of the tax refund payment pursuant to 26 U.S.C. 6402(a), (c), (d), and (e) shall occur prior to crediting the overpayment to any future liability for an internal revenue tax. Any amount remaining after tax refund offset under 26 U.S.C. 6402(a), (c), (d), and (e) shall be refunded to the taxpayer, or applied to estimated tax, if elected by the taxpayer pursuant to IRS regulations.

(e) Post-offset notice. (1)(i) FMS shall notify the debtor in writing of:

(A) The amount and date of the offset to satisfy past-due support;

(B) The State to which this amount has been paid or credited; and

(C) A contact point within the State that will handle concerns or questions regarding the offset.

(ii) The notice in paragraph (e)(1)(i) of this section also will advise any non-debtor who may have filed a joint tax return with the debtor of the steps which a non-debtor spouse may take in order to secure his or her proper share of the tax refund. See paragraph (f) of this section.

33

(2) FMS will advise HHS of the names, mailing addresses, and identifying numbers of the debtors from whom amounts of past-due support were collected, of the amounts collected from each debtor through tax refund offset, the names of any non-debtor spouses who may have filed a joint return with the debtor, and of the State on whose behalf each collection was made. Alternatively, FMS will provide such information to each State that refers debts directly to FMS. FMS will inform HHS and each State that the payment source is a tax refund payment.

(3) At least weekly, FMS will notify the IRS of the names and taxpayer identifying numbers of the debtors from whom amounts owed for past-due support were collected from tax refund offsets and the amounts collected from each debtor.

(4) At such time and in such manner as FMS and HHS agree, but no less than annually, FMS will advise HHS of the States which have furnished notices of past-due support, the number of cases in each State with respect to which such notices have been furnished, the amount of past-due support sought to be collected by each State, and the amount of such tax refund offset collections actually made in the case of each State. As FMS and HHS may agree, FMS may provide additional offset-related information about States which have furnished notices of past-due support.

(f) Offset made with regard to a tax refund payment based upon joint return. If the person filing a joint return with a debtor owing the past-due support takes appropriate action to secure his or her proper share of a tax refund from which an offset was made, the IRS will pay the person his or her share of the refund and request that FMS deduct that amount from amounts payable to HHS or the State, as the case may be. FMS and HHS, or the appropriate State, will adjust their debtor records accordingly.

(g) Disposition of amounts collected. FMS will transmit amounts collected for debts, less fees charged under paragraph (h) of this section, to HHS or to the appropriate State. If FMS learns that an erroneous offset payment is made to HHS or any State, FMS will notify HHS or the appropriate State that an erroneous offset payment has been made. FMS may deduct the amount of the erroneous offset payment from amounts payable to HHS or the State, as the case may be. Alternatively, upon FMS' request, the State shall return promptly to the affected taxpayer or FMS an amount equal to the amount of the erroneous payment (unless the State previously has paid such amounts, or any portion of such amounts, to the affected taxpayer). HHS and States shall notify FMS any time HHS or a State returns an erroneous offset payment to an affected taxpayer. FMS and HHS, or the appropriate State, will adjust their debtor records accordingly.

[[Page 118]]

(h) Fees. The State will pay a fee to FMS for the full cost of administering the tax refund offset program. The fee (not to exceed $25 per case submitted) will be established annually in such amount as FMS and HHS agree to be sufficient to reimburse FMS for the full cost of the offset procedure. FMS will deduct the fees from amounts collected prior to disposition and transmit a portion of the fees deducted to reimburse the IRS for its share of the cost of administering the tax refund offset program. Fees will be charged only for actual tax refund offsets completed.

(i) Review of tax refund offsets. In accordance with 26 U.S.C. 6402(f), any reduction of a taxpayer's refund made pursuant to 26 U.S.C.

34

6402(c), (d), or (e) shall not be subject to review by any court of the United States or by the Secretary of the Treasury, FMS or IRS in an administrative proceeding. No action brought against the United States to recover the amount of this reduction shall be considered to be a suit for refund of tax.

(j) Access to and use of confidential tax information. Access to and use of confidential tax information in connection with the tax refund offset program is permitted to the extent necessary in establishing appropriate agency records, locating any person with respect to whom a reduction under 26 U.S.C. 6402(c) is sought for purposes of collecting the debt, and in the defense of any litigation or administrative procedure ensuing from a reduction made under section 6402(c).

(k) Effective date. This section applies to tax refund payments payable under 26 U.S.C. 6402 after January 1, 1999.

[63 FR 72094, Dec. 30, 1998, as amended at 72 FR 59480, Oct. 22, 2007; 74 FR 27433, June 10, 2009]

### D.   TREASURY REGULATIONS – Federal Administrative Offset

```
[Code of Federal Regulations]
[Title 31, Volume 2]
[Revised as of July 1, 2009]
From the U.S. Government Printing Office via GPO Access
[CITE: 31CFR285.1]
```

[Page 107-112]

TITLE 31--MONEY AND FINANCE: TREASURY

CHAPTER II--FISCAL SERVICE, DEPARTMENT OF THE TREASURY

PART 285_DEBT COLLECTION AUTHORITIES UNDER THE DEBT COLLECTION IMPROVEMENT ACT

Subpart A_Disbursing Official Offset

Sec. 285.1  Collection of past-due support by administrative offset.


    (a) Definitions. For purposes of this section:
    Administrative offset means withholding funds payable by the United States (including funds payable by the United States on behalf of a State government) to, or held by the United States for, a person to satisfy a debt.
    Debt as used in this section is synonymous with the term past-due support.

[[Page 108]]

    Disbursing official includes an official who has authority to disburse public money pursuant to 31 U.S.C. 3321 or another Federal law.
    FMS means the Financial Management Service, a bureau of the Department of the Treasury. FMS is the designee of the Secretary of the Treasury for all matters concerning this section, unless otherwise specified.
    HHS means the Department of Health and Human Services, Office of Child Support Enforcement.
    Past-due support means the amount of support determined under a court order, or an order of an administrative procedure established under State law, for support and maintenance of a child, or of a child and the parent with whom the child is living, which has not been paid. The term child as used in this definition is not limited to minor children.
    Past-due support being enforced by the State means there has been an assignment of the support rights to the State, or the State making the request for offset is providing services to individuals pursuant to 42 U.S.C. 654(5) (section 454(5) of the Social Security Act), or the State is enforcing support pursuant to a cooperative agreement with or by an Indian tribal government.
    State means the several States of the United States. The term State also includes the District of Columbia, American Samoa, Guam, the United States Virgin Islands, the Commonwealth of the Northern Mariana Islands,

36

and the Commonwealth of Puerto Rico.

Secretary means the Secretary of the Treasury.

(b) General rule. FMS may enter into a reciprocal agreement with a State for the collection of past-due support being enforced by the State by administrative offset from certain Federal payments. Upon notification of past-due support either directly from a State which has entered into such an agreement or from HHS, disbursing officials of FMS or any other disbursing official of the United States shall offset Federal payments which are subject to offset under this section, to collect past-due support. The amount offset, minus the offset fee, shall be forwarded to the State to be distributed in accordance with applicable laws and procedures.

(c) Agreements. FMS may enter into reciprocal agreements with States for disbursing officials of FMS and any other Federal disbursing official to offset certain Federal payments to collect past-due support being enforced by the State. The agreement shall contain any requirements which FMS considers appropriate to facilitate the offset and prevent duplicative efforts and shall require States to prescribe procedures governing the collection of past-due support by Federal administrative offset. For purposes of this section, reciprocal means of mutual benefit. An agreement between FMS and a State to collect past-due support by offsetting Federal payments will be considered of mutual benefit and it is not required that States conduct administrative offsets to collect debts owed to the Federal Government. States which have entered into an agreement with FMS pursuant to this section may thereafter request, in the manner prescribed herein, that an offset be performed. Such requests shall be made by the appropriate State disbursing official which, for purposes of this section, means an appropriate official of the State agency which administers or supervises the administration of the State plan under Title IV-D of the Social Security Act.

(d) Notification to FMS of past-due support. (1) States notifying FMS of past-due support must do so in the manner and format prescribed by FMS. States notifying HHS of past-due support must do so in the manner and format prescribed by HHS. HHS shall notify FMS of all past-due support referred to HHS by States for collection by administrative offset provided that the requirements of paragraphs (d)(3) and (h) of this section have been met.

(2) When a State has knowledge that past-due support is being enforced by more than one State, the State notifying FMS and HHS of the past-due support must inform any other State involved in enforcing the past-due support when it refers the debt for offset and when it receives the offset amount.

(3) The notification of past-due support must be accompanied by a certification that the debt is past-due, legally

[[Page 109]]

enforceable, and that the State has complied with all the requirements as set forth in paragraph (h) of this section and with any requirements imposed by State law or procedure. For debts so certified, the Secretary may waive sections 552a (o) and (p) of Title 5, United States Code, where applicable, in accordance with the Secretary's authority under 31 U.S.C. 3716(f).

(4) FMS may reject a notification of past-due support which does not comply with the requirements of this section. The State will be notified of the rejection along with the reason for the rejection.

(e) Minimum amount of past-due support. FMS will reject a notification of past-due support where the past-due support owed is less than $25.00. This amount may be adjusted from time to time by FMS to ensure that the cost of collection does not exceed the debt.

(f) Limitations. Debts properly submitted to FMS for administrative offset will remain subject to collection by administrative offset until withdrawn by the State provided the debt remains past-due and legally enforceable.

(g) Notification of changes in status of debt. The State notifying FMS or HHS of past-due support shall, in the manner and in the time frames provided by FMS or HHS, notify FMS or HHS of deletions or decreases in the amount of a debt referred for collection by administrative offset. The State may notify FMS or HHS of any increases in the amount of a debt referred for collection by administrative offset provided the State has complied with the requirements of paragraph (h) of this section with regard to those amounts.

(h) Advance notification of intent to collect by administrative offset. (1) The State, or FMS or HHS on behalf of the State, if the State requests and FMS or HHS agrees, shall send a written notification, at least 30 days in advance of referral of the debt for offset, to the individual owing past-due support, informing the individual that the State intends to refer the debt for collection by administrative offset against Federal payments. The notice must also inform the individual of:

(i) The nature and amount of the debt; and

(ii) The right to an administrative review by the State referring the debt or, upon the request of the individual, by the State with the order upon which the referral was based, of the determination of the State with respect to the debt and of the procedures and time frames established by the State for such reviews.

(2) Prior to referring a debt to FMS for collection by administrative offset, States must provide individuals with a reasonable opportunity to exercise the rights enumerated in paragraph (h)(1) of this section in accordance with procedures prescribed by the State.

(i) Payments subject to offset. Federal payments subject to offset under this section include all Federal payments except:

(1) Payments due to an individual under

(i) Title IV of the Higher Education Act of 1965;

(ii) The Social Security Act;

(iii) Part B of the Black Lung Benefits Act;

(iv) Any law administered by the Railroad Retirement Board;

(2) Payments which the Secretary determines are exempt from offset in accordance with paragraph (k) of this section;

(3) Payments from which collection of past-due support by administrative offset is expressly prohibited by law;

(4) Payments made under the Internal Revenue Code of 1986 (except that tax refund payments are subject to offset under separate authority); and

(5) Payments made under the tariff laws of the United States.

(j) Special provisions applicable to Federal salary payments. (1) Unless a lower maximum offset limitation is provided by applicable State law, the maximum part of a Federal salary payment per pay period subject to offset to collect past-due support shall not exceed those amounts set forth at section 1673(b)(2) (A) and (B) of Title 15, United States Code, as follows:

(i) Fifty (50%) percent of the debtor's aggregate disposable earnings for any pay period, where the debtor asserts by affidavit, or by other acceptable evidence, that he/she is supporting a spouse and/or

dependent child, other than the former spouse and/or child for

[[Page 110]]

whom support is being collected, except that an additional five (5%)
percent will apply if it appears that such earnings are to enforce past-
due support for a period which is twelve (12) weeks or more prior to the
pay period to which the offset applies. A debtor shall be considered to
be supporting a spouse and/or dependent child only if the debtor
provides over half of the spouse's and/or dependent child's support.
    (ii) Sixty (60%) percent of the debtor's aggregate disposable
earnings for any pay period where the debtor fails to assert by
affidavit or establish by other acceptable evidence that he/she is
supporting a spouse and/or dependent child, other than a former spouse
and/or child for whom support is being collected, except that an
additional five (5%) percent will apply if it appears that such earnings
are to enforce past-due support for a period which is twelve (12) weeks
or more prior to the pay period to which the offset applies.
    (2) The maximum allowable offset amount shall be reduced by the
amount of any deductions in pay resulting from a garnishment order for
support. Nothing in this rule is intended to alter rules applicable to
processing garnishment orders for child support and/or alimony.
    (3) Federal salary payments subject to offset for the collection of
past-due support include current basic pay, special pay, incentive pay,
retainer pay, overtime, or in the case of an employee not entitled to
basic pay, other authorized pay. Aggregate disposable earnings for
purposes of determining the maximum amounts which may be offset under
paragraph (j)(1) of this section is Federal salary pay remaining after
the deduction of:
    (i) Any amount required by law to be withheld;
    (ii) Amounts properly withheld for Federal, State or local income
tax purposes;
    (iii) Amounts deducted as health insurance premiums;
    (iv) Amounts deducted as normal retirement contributions, not
including amounts deducted for supplementary coverage; and
    (v) Amounts deducted as normal life insurance premiums not including
amounts deducted for supplementary coverage.
    (4) At least 30 days in advance of offset, the disbursing official
shall send written notice to the debtor of the maximum offset
limitations described in paragraph (j)(1) of this section. The notice
shall include a request that the debtor submit supporting affidavits or
other documentation necessary to determine the applicable offset
percentage limitation. The notice shall also inform the debtor of the
percentage that will be deducted if he/she fails to submit the requested
documentation.
    (5) At the time the past-due support debt is submitted for offset,
the State shall advise FMS or HHS if the maximum amount of a Federal
salary payment that may be offset is less than the amount described
under this paragraph.
    (k) Payments exempt from administrative offset to collect past-due
support being enforced by a State. The Secretary will exempt from
administrative offset under this part payments made under means-tested
programs when requested by the head of the Federal agency which
administers the program. For purposes of this section, means-tested
programs are programs for which eligibility is based on a determination
that income and/or assets of the beneficiary are inadequate to provide
the beneficiary with an adequate standard of living without program

assistance. The Secretary may exempt from administrative offset under this section any other class or type of payment upon the written request of the head of the agency which authorizes the payments. In determining whether or not to grant such exemptions, the Secretary shall give due consideration to whether administrative offset would tend to interfere substantially with or defeat the purposes of the payment agency's program.

   (l) Fees. A fee which FMS has determined to be sufficient to reimburse FMS for the full cost of the offset procedure, shall be deducted from each offset amount. FMS will notify the States, annually and in advance, of the amount of the fee to be charged for each offset.

   (m) Offsetting payments--(1) Conducting the offset. Disbursing officials of

[[Page 111]]

the Department of the Treasury, the Department of Defense, the United States Postal Service, or any other Government corporation, any disbursing official of the United States designated by the Secretary, or any disbursing official of an executive department or agency that disburses Federal payments shall offset payments subject to offset under this section to satisfy, in whole or part, a debt owed by the payee. Disbursing officials shall compare payment certification records with records of debts submitted to FMS for collection by administrative offset. A match will occur when the taxpayer identifying number and name control of a payment record are the same as the taxpayer identifying number and name control of a debt record. The taxpayer identifying number for an individual is the individual's social security number. When a match occurs and all other requirements for offset have been met, the disbursing official shall offset the payment to satisfy, in whole or part, the debt. Any amounts not offset shall be paid to the payee. The amount that can be offset from a single payment is the lesser of the amount of the debt (including interest, penalties, and administrative costs); the amount of the payment; or the amount of the payment available for offset if a statute or regulation prohibits offset of the entire amount. Debts remain subject to collection by offset until paid in full.

   (2) Disposition of amounts collected. FMS will transmit amounts collected for debts, less fees charged under paragraph (l) of this section, to HHS or to the appropriate State. If FMS learns that an erroneous offset payment has been made to HHS or any State, FMS will notify HHS or the appropriate State that an erroneous offset payment has been made. FMS may deduct the amount of the erroneous offset payment from amounts payable to HHS or the State, as the case may be. Alternatively, upon FMS' request, the State shall return promptly to the affected payee or FMS an amount equal to the amount of the erroneous payment (unless the State previously has paid such amounts, or any portion of such amounts, to the affected payee). HHS and States shall notify FMS any time HHS or a State returns an erroneous offset payment to an affected payee. FMS and HHS, or the appropriate State, will adjust their debtor records accordingly.

   (n) Administrative offset priorities. (1) A levy pursuant to the Internal Revenue Code of 1986 shall take precedence over deductions under this section.

   (2) Offsets will be applied first to past-due support being enforced by the State before any other offsets under this part.

   (o) Notification of offset. (1) Disbursing officials of FMS or any

40

other disbursing official which conducts an offset will notify the payee
in writing of the occurrence of the offset to satisfy past-due support.
The notice shall inform the payee of the type and amount of the payment
that was offset; the identity of the State which requested the offset;
and a contact point within the State that will handle concerns regarding
the offset. Disbursing officials shall not be liable for failure to
provide this notice.

(2) Disbursing officials of FMS or any other disbursing official
which conducts an offset under this section will share with HHS, upon
request by the Secretary of HHS, information contained in payment
certification records of persons who are delinquent in child support
obligations that would assist in the collection of such debts. When no
offset is conducted, disbursing officials of FMS or any other disbursing
official, will provide such information to HHS to the extent such
information is available from offset activities conducted by FMS and
other disbursing officials.

(p) Liability of disbursing officials and payment agencies. Neither
the disbursing official nor the agency authorizing the payment shall be
liable for the amount of the administrative offset on the basis that the
underlying obligation, represented by the payment before the
administrative offset was taken, was not satisfied. Disbursing officials
will notify the agency authorizing the payment that the offset has

[[Page 112]]

occurred so that the agency authorizing the payment may direct any
inquiries concerning the offset to the appropriate State.

[62 FR 36210, July 7, 1997, as amended at 63 FR 46145, Aug. 28, 1998; 74
FR 27433, June 10, 2009]

# Exhibit 2

Date: 06/01/2017  09:01:57.8          Docket Sheet                    Page: 4

CRTR5925                                Summary

2009 SUP 001273   KELETA, AIDA  Vs. ARAYA, HENOK

| No. | Date of | Pleadings Filed, Orders and Decrees<br>Journal Book-Page-Nbr    Ref Nbr | Amount Owed/<br>Amount Dismissed | Balance Due |
|---|---|---|---|---|
| 24 | 📷 04/20/10 | Case Closed/Dismissed by Judge | 0.00 | 0.00 |
| 25 | 01/21/10 | Event Resulted:<br>The following event: Financial Review<br>Hearing scheduled for 04/15/2010 at<br>9:30 am has been resulted as follows:<br><br>Result: Scheduled Hearing Vacated<br>Judge: SADDLER, FERN LR   Location:<br>Courtroom 101 | 0.00 | 0.00 |
| 26 | 12/31/09 | Judge Caseload Transfer-Criminal<br>The judge was changed from CHRISTIAN,<br>ERIK to SADDLER, FERN . | 0.00 | 0.00 |
| 27 | 11/10/09 | Event Scheduled:<br><br>The following event: Financial Review<br>Hearing scheduled for 11/09/2009 at<br>11:00 am has been rescheduled as<br>follows:<br><br>Event: Financial Review Hearing<br>Date: 04/15/2010   Time: 9:30 am<br>Judge: SADDLER, FERN LR   Location:<br>Courtroom 101 | 0.00 | 0.00 |
| 28 | 📷 11/09/09 | Praecipe Filed: Praecipe Withdrawing<br>the Government's Appearance<br>Attorney: ORTON, Mr MICHAEL W W<br>(430225) | 0.00 | 0.00 |
| 29 | 11/09/09 | Event Resulted:<br>The following event: Financial Review<br>Hearing scheduled for 11/09/2009 at<br>11:00 am has been resulted as follows:<br>BOTH PARTIES PRESENT WITH COUNSEL.<br>AAG MICHAEL ORTON PRESENT.   THE<br>GOVERNMENT WITHDRAWS FROM THIS CASE<br>BECUASE THE PETITIONER ALREADY HAS<br>COUNSEL.   FINANCIAL REVIEW HEARING<br>CONTINUED TO: 4/15/10 @9:30AM IN<br>COURTROOM 101.<br>Result: P&S Financial Review Continued<br>Judge: SADDLER, FERN LR   Location:<br>Courtroom 101 | 0.00 | 0.00 |
| 30 | 10/07/09 | Notice to Return to Court<br>HENOK ARAYA (Respondent); | 0.00 | 0.00 |