**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ———————————————— ) | |
| HENOK A. MENGESHA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-3304 (ABJ) |
| ) | |
| BENIDIA RICE ) | |
| *In her official and* ) | |
| *individual capacity*, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ———————————————— ) | |

**<u>MEMORANDUM OPINION</u>**

 Plaintiff Henok Araya Mengesha, proceeding *pro se*, filed this complaint on November 1, 2019, against the District of Columbia ("the District") and Benidia Rice, Magda Benfield, Jame Kevin McIntyre, Nicole Reece, and Yajaira Briganty, in their official and individual capacities as employees of Child Support Services Division ("CSSD") of the D.C. Office of the Attorney General.  Compl. [Dkt. # 1].  The complaint relates to the enforcement of a child support order issued by the Superior Court of the District of Columbia in 2009.  *Id.*

 Plaintiff seeks compensatory and punitive damages and injunctive relief pursuant to 42 U.S.C. § 1983, and he has brought common law claims alleging negligence and malicious prosecution.  *Id.*  On December 6, 2019, plaintiff amended his complaint to add a ninth claim seeking additional compensatory damages for early withdrawals made from his retirement account.  Pl.'s First Amended Compl. [Dkt. # 12] ("First Am. Compl.") at 20–21.  On May 15, 2020, plaintiff filed a motion for a preliminary injunction against the District, [Dkt. # 24] ("Pl.'s Mot. for Prelim. Inj."), and on May 22, 2020, the Court consolidated that motion with

consideration of the merits of the case pursuant to Federal Rule of Civil Procedure 65(a)(2).  Min. Order of May 22, 2020.

The District moved to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(5) for failure to effect timely service in accordance with the federal and local civil rules, Def.'s Mot. to Dismiss by the District [Dkt. # 6] ("District Mot."), and all of the defendants have moved to dismiss plaintiff's claims for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* District Mot. at 1; Def.'s Mem. of P. & A. in Supp. of Mot. to Dismiss by District [Dkt. # 6] ("District Mem."); Defs.' Mot. to Dismiss Am. Compl. by Benfield, McIntyre, & Rice [Dkt. # 28] ("Benfield et al. Mot."); Def.'s Mot. to Dismiss Am. Compl. by Briganty [Dkt. # 32] ("Briganty Mot.").[1]

---

1        Benfield et al. Mot. [Dkt. # 28] and Briganty Mot. [Dkt. # 32] adopt and incorporate in full the arguments in District Mot. [Dkt. # 6] and District Reply [Dkt. # 22].  Benfield et al. Mot. at 7; Briganty Mot. at 3.

The Court finds that plaintiff rectified his service deficiencies, and therefore, the District's motion to dismiss for insufficient service will be denied as moot.[2]  But after consideration of all of the parties' submissions and the entire record in this case,[3] the Court will grant defendants' motions to dismiss for failure to state a claim under Rule 12(b)(6).

## BACKGROUND

Plaintiff and his wife separated in 2009, and they have since been embroiled in litigation in D.C. Superior Court that included not only the divorce, but claims of domestic violence, and proceedings seeking child support.   *See* June 17, 2019 Final Order from the Office of Administrative Hearings, Case No. 2018 OAG 00038 [Dkt. # 6-1] ("2019 OAH Final Order") at 3– 5.[4]   On November 6, 2009, the court consolidated six of the related cases, including 2009-SUP-1273 ("2009 SUP 1273"), a child support case being prosecuted by the Office of the Attorney General for the District of Columbia.   *See* 2019 OAH Final Order at 5.

---

2        *See* District Mot. at 1 n.1; District Mem. at 6–8.  Plaintiff filed proof of service for all defendants on May 4, 2020.  *See generally* Return of Service Affs. [Dkt. # 16], [Dkt. # 17], [Dkt. # 18], [Dkt. # 19], [Dkt. # 20], and [Dkt. # 21].

3        *See*  Def.'s Reply in Supp. of Mot. to Dismiss by the District [Dkt. # 22] ("District Reply"); Defs.' Reply in Supp. of Mot. to Dismiss by Benfield, McIntyre, & Rice [Dkt. # 31] ("Defs.' Reply by Benfield et al."); Def.'s Reply to Pl.'s Mem. in Opp. by Briganty [Dkt. # 36] ("Def.'s Reply by Briganty"); Pl.'s Mem. in Opp. to District's Mot. to Dismiss [Dkt. # 14] ("Pl.'s First Opp. to District"); Pl.'s Mem. in Opp. to District's Mot. to Dismiss [Dkt. # 23] ("Pl.'s Second Opp. to District"); Def.'s Opp. to Mot. for Prelim. Inj. [Dkt. # 25] ("District Opp. to Prelim. Inj."); Pl.'s Reply to Opp. to Mot. for Prelim. Inj. [Dkt. # 26] ("Pl.'s Reply to District Opp. to Prelim. Inj."); Pl.'s Mem. in Opp. to Mot. to Dismiss by Benfield, McIntyre, & Rice [Dkt. # 30] ("Pl.'s Opp. to Benfield et al. Mot."); and Pl.'s Mem. in Opp. to Mot. to Dismiss by Briganty [Dkt. # 35] ("Pl.'s Opp. to Briganty Mot.").

4        Related cases resolved before the D.C. Superior Court, listed in Table 2 of 2018-OAG-00038, include:   2009-CPO-1579; 2009-CPO-1789; 2009-CPO-2447; 2009-CPO-2448; 2009-DRB 1388; 2009-DRB-3351; 2009-INT-261; and 2009-SUP-1273.  *See* 2019 OAH Final Order at 4.

On April 20, 2010, the court issued an order which, among other things, dismissed 2009 SUP 1273 because of its redundancy with another support case before the D.C. Superior Court, 2009-DRB-1388.   *See* April 20, 2010 DCSC Order ("2010 Order and Vacatur"), cited in 2019 OAH Final Order at 5.

In July 2015, CSSD mistakenly filed a motion to intervene in 2009 SUP 1273,[5] and there were a number of motions and hearings before the D.C. Superior Court on the matter through November 2016.  *See* Table 4, 2019 OAH Final Order at 6–7.  On October 18, 2016, plaintiff filed two motions to address the mistaken re-opening of the administratively-closed 2009 SUP 1273,[6] and a November 17, 2016 order of the D.C. Superior Court denied both of them.  *Id*. at 8.

As part of the 2009 divorce and related proceedings, plaintiff was ordered to make child support payments in the amount of $3,128 per month.  *See* 2011 Divorce Decree, cited in 2019 OAH Final Order at 9 n.40.  But plaintiff failed to make many payments, in full or in part, through the required clearinghouse, and between 2010 and 2016, plaintiff appeared to be more than $165,000 in arrears on his child support obligations.  *Id*. at 9–11.  In a November 2016 hearing, the Superior Court found that payments made by plaintiff towards his ex-wife's mortgage were not a permissible method for satisfying the shortfall, and that even if the mortgage payments were counted, plaintiff was still at least $35,000 in arrears.  *Id*. at 12.

---

5    The 2019 Final OAH Order notes the 2010 Order and Vacatur "mention[ed] that CSSD was a party to [the] 2009 SUP 1273" support case, but no notice of its administrative closure was issued to CSSD.  *Id*. at 5.

6    Plaintiff's motions filed in D.C. Superior Court were titled "Motion to Direct CSSD to Correct its Records" and "Motion for Emergency Preliminary Injunction Against D.C. Gov-Office of Attorney General Child Support Services Division."  *See* OAH 2019 Final Order at 7.

In August 2016, CSSD sought a writ attaching plaintiff's funds in an investment account ("E*Trade account") to satisfy his outstanding child support obligations, and in February 2018, the agency conducted an administrative review to confirm its calculation of the amount he was in arrears. 2019 OAH Final Order at 14. The Office of Administrative Hearings ("OAH") found no error in the 2016 and 2018 calculations, and it concluded that the total amount owed was $165,613.34. *Id.* at 16, 22.

The instant lawsuit is based on an alleged administrative error. Plaintiff complains that CSSD incorrectly continued to use case number 2009 SUP 1273 as the basis for the writ of attachment that froze plaintiff's accounts, despite the fact that the case bearing that number had previously been administratively closed. *See* 2019 OAH Final Order at 17; First Am. Compl. at 19. In a proceeding before the OAH on this issue, an administrative law judge concluded that CSSD's "Administrative Judgment of Condemnation" should be reversed for this reason, and that the funds in plaintiff's E*Trade account linked to 2009 SUP 1273 should be returned to him. 2019 OAH Final Order at 22.[7] The District has appealed the decision within the OAH, and the

---

[7]     Nevertheless, the 2019 OAH Final Order also determined that the garnishment was improper *only* because it should have been attached to plaintiff's 2009 DRB 1388 case, rather than the 2009 SUP 1273 case, and plaintiff still owed more than $165,000 in child support payments, ten times the amount attached to the E*Trade account. *See* District Mem. at 3.

appeal remains pending.  District Mem. at 3.[8]

Plaintiff first brought this complaint against the District of Columbia and the CSSD employees in their official and individual capacities in November 2019, Compl., and he amended his complaint in April 2020.  First Am. Compl.  The amended complaint consists of nine counts, including a section 1983 claim based on an alleged violation of plaintiff's due process rights under the Constitution and a series of common law claims:  negligence, negligence per se, negligent supervision, negligent infliction of emotional distress and malicious prosecution.  First Am. Compl. at 10–20.  Plaintiff seeks more than $13 million in compensatory and punitive damages in addition to equitable relief:  (i) a preliminary and permanent injunction preventing CSSD from reporting child support arrearages to the federal offset program or credit reporting agencies in the absence of a valid Superior Court order and (ii) the appointment of a conservator to oversee the hiring, training, and management of CSSD employees.  *Id*. at 19.

---

8       The Court notes that to the extent the plaintiff is seeking to re-litigate previous rulings issued by the Superior Court, or he is hoping to forestall the ongoing appeal of the decision in his favor, the district court is without authority to review or reverse a Superior Court judge's ruling, and ordinarily, it does not interfere with pending Superior Court matters.  *See Richardson v. Dist. of Columbia Court of Appeals*, 83 F.3d 1513, 1514 (D.C. Cir. 1996) ("[F]ederal district courts lack jurisdiction to review judicial decisions by state and District of Columbia courts."), citing *Dist. of Columbia v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923); *Moorman v. U.S. Bank, NA*, No. 10-CV-1219, 2010 WL 2884661, at *1  (D.D.C. July 10, 2010) ("This court does not have jurisdiction to review . . . orders issued by the Superior Court of the District of Columbia, and, in the interests of comity, will not intervene in a case pending before the Superior Court.").  The D.C. Superior Court denied a motion filed by plaintiff four years ago to correct the CSSD record and issue a preliminary injunction, and plaintiff may not use these proceedings to re-adjudicate these claims.   *See Lance v. Dennis*, 546 U.S. 459, 463 (2006) ("[L]ower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."); *see also Johnson v. Director, Court Servs. & Offender Super. Agency*, 767 Fed. App'x 10 (D.C. Cir. 2019) (upholding district court's dismissal of challenge to a D.C. Superior Court decision).

Defendants argue that plaintiff's only federal claim, which seeks to hold the District and its employees liable for an alleged violation of his due process rights, fails because plaintiff had and continues to have an opportunity to pursue relief in the ongoing administrative action before the OAH and in the D.C. Superior Court.  District Mem. at 8.  Defendants urge the Court to then decline to exercise supplemental jurisdiction over plaintiff's non-federal claims in its discretion under 28 U.S.C. § 1367(c)(3), District Mem. at 10–11, or in the alternative, to dismiss them for failure to state a claim.  *Id* at 11.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When considering a motion to dismiss under Rule 12(b)(6), the Court must construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).  Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  That said, the Court is not required to accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."); *Kowal*, 16 F.3d at 1276; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I.   Plaintiff's Section 1983 Claim

Plaintiff contends that defendants' actions deprived him of his constitutional rights, and that he is entitled to relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983.  First Am. Compl. at 3, 16–17.  The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

The term "person" in section 1983 includes municipalities, such as the District of Columbia, but a municipality cannot be held liable under section 1983 "*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [section] 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original).  To maintain a section 1983 action against the District of Columbia, the Court must first "determine whether the complaint states a claim for a predicate constitutional violation," and "then the court must determine whether the complaint states a claim that a custom or policy of the

municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003), citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).

In assessing the first prong, the Court addresses whether plaintiff has stated a claim for a constitutional violation. "In order to establish this predicate violation, neither District of Columbia policy makers nor employees need be implicated. All that is being established at this stage is that there is some constitutional harm suffered by the plaintiff, not whether the municipality is liable for that harm." *Baker*, 326 F.3d at 1306.

Plaintiff alleges that CSSD and its employees infringed his due process rights because they took steps to withhold his personal funds without a court order and reported him to a federal offset program "without probable cause." First Am Compl. at 16. Plaintiff does not specify the provision of the Constitution under which his cause of action arises, so the Court will construe his claims under the Fifth Amendment, which protects against the deprivation of property without due process.[9] U.S. Const. amend. V.

### a. Plaintiff has failed to state a claim that he has been deprived of due process.

To determine whether plaintiff has stated an actionable claim, the Court must assess (1) whether plaintiff has plausibly alleged that he was deprived of a protected interest, and, if so, (2) whether the complaint indicates that he has not received the process due. *See UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs. of UDC*, 56 F.3d 1469, 1471 (D.C. Cir. 1995). Plaintiff must allege that he has been deprived of a life, liberty, or property interest protected by the due process clause to survive a motion to dismiss, *see Mathews v. Eldridge*, 424 U.S. 319, 333

---

9    "Because [the District of Columbia] is a political entity created by the federal government, it is subject to the restrictions of the Fifth Amendment, not the Fourteenth." *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991), citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

(1976); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570–72 (1972), and if the Court finds the deprivation of a protected interest, it then assesses whether the defendant complied with due process requirements. *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (citation omitted).

Plaintiff plainly alleges that he was wrongly deprived of property – $140,000 of his general investment and retirement funds, *see* First Am. Compl. at 19–21 – so the question is whether the complaint also alleges that he was denied the minimum requirements of due process.

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985), quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). The government must provide "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333, quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The nature and extent of procedural protections mandated by the Constitution vary with the particular situation and the interest at stake, *see Zinermon v. Burch*, 494 U.S. 113, 127 (1990); courts determine the adequacy of the process that was afforded by weighing three factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, the private interest affected by the writ of attachment is purely economic. So while plaintiff may have an important protected property interest in his savings, it is an interest that can

be fully refunded if it was taken in error.  As for the process that was afforded, plaintiff was given notice of OAH's calculations of the amounts he owed in child support, and a review of the complaint shows that he not only had the opportunity to challenge the resulting writ of attachment, but he did so robustly.[10]  Indeed, OAH rendered a decision in plaintiff's favor in 2019 and ordered the funds released to him.[11]  2019 OAH Final Order at 23.  The mere fact that CSSD has exercised its right to appeal the decision ordering that the funds be returned does not support a claim that due process has been or will be denied; plaintiff has provided no evidence that he will be unable to participate fully in that proceeding.

Moreover, there are other procedural safeguards which plaintiff may invoke; he may seek judicial review of his common law claims against CSSD in D.C. Superior Court.[12]  And he may seek review of his child support order at any time.  *See* 45 C.F.R. § 303.8(b)(1); D.C. Code § 46-204(a).  Therefore, the Court concludes that plaintiff has failed to state a claim for a deprivation of his property without due process because it is plain from the face of the complaint and the public records of the proceedings he describes in the complaint that plaintiff has had and

---

10     For example:  "Although Dr. Araya raised[,] testified[,] and argued that he should not be required to pay any of the DCSC ordered child support payments, he did not specify which of OAH's actual authorized reviews he requested."  2019 Final OAH Order at 13.  *See also* First Am. Compl. at 16–17 ("[Defendants] failed to attend scheduled court hearings.  [Defendants] refused to follow court orders that benefited me by stating that they do not follow some judge's [sic] orders . . . [I] spent so much time defending baseless allegations . . . [I] spent 3 years and 1200 hours litigating a dismissed and closed case.").

11     The 2019 decision gives rise to serious questions about whether plaintiff's allegations here are moot.  But the Court will not dismiss the case *sua sponte* for lack of subject matter jurisdiction in the event the pending appeal means that the matter is still unresolved to some extent.

12     Plaintiff also could have sought review before the D.C. Court of Appeals regarding his 2011 Divorce Decree, which included resolution of child support issues.  *See* D.C. Code § 11-721(a)(1); D.C. Ct. App. Rule 4(a).

11

will continue to have multiple opportunities to challenge the District's efforts to enforce his child support obligations.

### b. Plaintiff has failed to state claims against the named defendants in their individual capacities.

Plaintiff's section 1983 claim against the CSSD employees is also flawed for another reason. Although plaintiff stated that the employees were being sued in their official and individual capacities, a close reading of the complaint reveals it solely recounts actions taken by the defendants in their official capacities as agency employees.[13] Since plaintiff failed to allege any wrongdoing by the named defendants in their individual capacities, he has failed to state a claim for relief against them under section 1983. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Cameron v. Thornburgh*, 983 F.2d 253, 257–58 (D.C. Cir. 1993) (dismissing claims against government officials "[i]n the absence of any allegations specifying the[ir] involvement").

In his opposition, plaintiff merely repeats conclusory allegations from the complaint, *see, e.g.*, Pl.'s Opp. to Benfield et al. Mot. at 1 (asserting that he "properly alleged that the defendants in their individual capacities have '[m]isused the power, possessed by virtue of state law'"), and his chief objection to the motion to dismiss is that defendants have not answered his "50 allegations." *Id.* But a motion to dismiss is a proper responsive pleading under the Federal

---

13    "Defendants were at all times relevant to this proceeding OAG attorneys acting within the course and scope of their employment and employees of office child support agency or IVD agency or office of attorney general [sic]. The defendants are being sued in both their official and individual capacities[.]" First Am. Compl. ¶ 4.

Rules, and defendants were not required to respond to the allegations at this stage of the proceedings. *See* Fed. R. Civ. P. 12(b).

### c. Plaintiff has not stated a claim for municipal liability.

Even if plaintiff had alleged a violation of his due process rights, he has failed to plead facts sufficient to state a claim for municipal liability under the Supreme Court's decision in *Monell*, 436 U.S. at 658, and its progeny.

To proceed against a municipality, a plaintiff must allege that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983." *Monell*, 436 U.S. at 694. In other words, "a municipality cannot be held liable under [section] 1983 on a *respondeat superior* theory," *id*. at 691, because "[t]he 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). Thus, if the complaint states a claim for a predicate constitutional violation, the court must then determine whether the complaint states a claim that a custom or policy of the municipality caused the violation.

The D.C. Circuit has explained that there are several ways in which the requirement may be satisfied:

> [T]he explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom'; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations.

*Baker*, 326 F.3d at 1306 (internal citations omitted).

The complaint alleges that plaintiff's E*Trade account was seized pursuant to the incorrect Superior Court order,[14] but it does not set forth any facts that would support any of the four means by which a municipality can be shown to be liable under *Baker*, and the element of causation is missing entirely. While plaintiff alleges that there were missteps or shortcomings in the process used by CSSD to attach his accounts,[15] he does not allege facts that would satisfy *Monell*.

Since the complaint fails to allege a due process violation, it fails to allege individual wrongdoing, and it fails to allege that a custom or policy of the municipality caused the claimed constitutional violation, the Court will dismiss Count Three of the complaint.

## II.   Plaintiff's Common Law Claims

Count Three, the section 1983 claim, was the sole basis for the court's exercise of federal subject matter jurisdiction over the complaint. Counts One, Two, Four, and Five are all brought

---

14      *See, e.g.*, First Am. Complaint at 4 ("On 10/2016, Defendants issued a notice of attachment to my E-trade investment account for a total of $16,500 stating that I owed child support arrears for 6 years on the order of 09-sup-1273 order [sic]."); *id*. at 17 ("Had they reached out to me in 2009, any alleged arrears would have been rectified.").

15      *See, e.g.*, First Am. Compl. at 16 ("[D]efendants were required to contact me within 30-60 [days] of an alleged default/violation; they did not."); *id*. at 10 ("Defendants did not have any legal authority to have taken the actions that they have taken.").

under state common law for negligence and malicious prosecution, and none present a federal question. *See* First Am. Compl. at 10–19; 28 U.S.C. § 1331. Given the dismissal of the federal cause of action, and the sound general principles of comity that caution against intervening in ongoing state court proceedings, *see* n.8 *supra,* the Court will decline to exercise supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(c)(3).

### III.     Plaintiff's Claims for Compensatory and Injunctive Relief

The four remaining counts in the amended complaint call for remedies such as the repayment of funds or injunctive relief. Since they specify no independent basis for granting the relief, the Court will assume they were predicated on the claims that have already been addressed and dismissed. If they were meant to advance some other legal theory, they will be dismissed for failure to comport with Federal Rule of Civil Procedure 8(a). Rule 8(a) requires that complaints contain "(1) a short and plain statement of the grounds for the court's jurisdiction [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and even *pro se* litigants are bound by this requirement. *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).

Counts Six and Nine seek forms of repayment for what plaintiff's stock "would have been worth," First Am. Compl. at 19–21, and plaintiff's "tax liability" for early withdrawal from his retirement account. *Id*. at 20–21. Once again, the fact that plaintiff has obtained a reversal of the order that prompted this lawsuit suggests that such claims may be moot, but in any event, these free-standing claims for relief fail in the absence of any valid underlying claim. The sole federal claim for damages has been dismissed, and to the extent the request to be repaid for tax liability incurred was intended to be an element of plaintiff's damages for his common law claims, the Court will decline to exercise jurisdiction over it along with the other state claims.

15

The final two counts seek equitable relief:  Count Seven asks the Court to prevent the agency from making any reports to the federal clearinghouse for child support payments, First Am. Compl. at 19–20, and Count Eight seeks the appointment of a conservator to "investigate the 60,000 children that have not received child support while the defendants are prosecuting plaintiff." *Id*. at 20.  Since plaintiff's federal claims against the District have failed, and plaintiff has failed to point to any other legal basis for the proposed orders, there is no predicate for such broad relief, and the counts will be dismissed.  With respect to Count Eight, the Court adds that it is generally outside the authority of the district court to inform a law enforcement agency how best to expend its limited resources or how to order its prosecutorial priorities.  *See Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985).

**CONCLUSION**

The Court finds that plaintiff has failed to state a claim that he has been denied due process because plaintiff has had, and still has, opportunities to be heard in administrative or Superior Court proceedings, and therefore his sole federal claim against defendants fails.  The Court declines to exercise its supplemental jurisdiction over plaintiff's remaining common law claims pursuant to 28 U.S.C. § 1367(c)(3).

For these reasons, the Court will **GRANT** defendants' motions to dismiss, [Dkts. ## 6, 28, & 32], for failure to state a claim under Federal Rule 12(b)(6).  Plaintiff's motion for preliminary injunction [Dkt. # 24], consolidated with the merits under Federal Rule 65(a)(2), will be **DENIED**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 30, 2020